SIXTH DIVISION
December 19, 2008

No. 1-06-1645

| | | |
|---|---|---|
| ILLINOIS COUNCIL OF POLICE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | On petition for direct review |
| | ) | of a decision and order of the |
| | ) | Illinois Labor Relations |
| | ) | Board |
| | ) | Local Panel. |
| v. | ) | |
| | ) | |
| ILLINOIS LABOR RELATIONS BOARD, | ) | |
| LOCAL PANEL; METROPOLITAN | ) | No. L-RC-05-014 |
| WATER RECLAMATION DISTRICT OF | ) | |
| GREATER CHICAGO; FIREMEN AND | ) | |
| OILERS UNION, LOCAL NO. 7, SEIU, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This is a direct appeal from a final order of the Illinois Labor Relations Board (the Board)

dismissing a representation petition filed by the plaintiff, a labor union, the Illinois Council of

Police (the ICOP). The case involves a dispute between two competing labor unions, the ICOP,

and the Firemen and Oilers Union, Local 7 (Local 7), who both seek to exclusively represent the

"police officers" employed by the Metropolitan Water Reclamation District of Greater Chicago

(the Water District).

The ICOP filed a representation petition with the Board pursuant to section 9(a) of the

Illinois Public Labor Relations Act (Act) (5 ILCS 315/9(a) (West 2006)) asking the Board to

sever a group of police officers from the existing bargaining unit made up of both police and

1

No. 1-06-1645

nonpolice employees working at the Water District. Prior to this petition, Local 7 exclusively represented the entire bargaining unit, including the police officers. The Board dismissed the ICOP's petition, finding that there was no "reasonable cause to believe" a question of representation existed under the Act and, therefore, no reason to hold an evidentiary hearing. The ICOP appeals the decision of the Board[1] contending that: (1) pursuant to section 9(a) of the Act (5 ILCS 315/9(a) (West 2006)) the Board had no authority to dismiss its petition without first conducting a hearing; and (2) the Board erred when it refused to use the less stringent severance standard proposed by the ICOP in evaluating whether severance of the police officers from the existing bargaining unit was appropriate. For the reasons that follow, we affirm.

I. BACKGROUND

1. Proceedings Before the Board

On April 7, 2005, the ICOP filed a timely petition for representation/certification with the Board, seeking to sever those employees designated as "police officers" from the bargaining unit represented by Local 7, so as to comprise a separate bargaining unit requiring separate representation by the ICOP. The petition alleged that it was being brought on behalf of 51 employees of the Water District designated as "police officers below the rank of sergeant." The petition further alleged that at least 30% of the 51 employees in the proposed unit requested a

---

[1]The plaintiff has jurisdiction to directly appeal the dismissal of his petition to this court pursuant to section 9(i) of the Act (5 ILCS 315/9(i) (West 2006)), section 3-113 of the Administrative Review Law (735 ILCS 5/3-113 (West 2006)) and Supreme Court Rule 335 (155 Ill. 2d 335). None of the parties raise questions regarding jurisdiction and we find none.

2

secret ballot election to determine whether the ICOP should be certified as the exclusive collective bargaining agent for the employees in that unit. The petition acknowledged that at the present moment, Local 7 was the exclusive bargaining agent for these employees, under an existing collective bargaining agreement between Local 7 and the Water District, which was set to expire on June 30, 2005. A copy of that collective bargaining agreement was attached to the petition.

On April 12, 2005, the clerk for the Board sent a letter to the Water District notifying it of the ICOP's petition and directing the Water District to: (1) submit a list of names and job classifications of the employees that are police officers in Local 7, and (2) to post a notice to the Water District's employees informing them that a representation petition had been filed. A copy of a tentative hearing notice was attached to the letter, indicating that unless the parties both signed the attached waiver form, a hearing was scheduled for May 23, and May 24, 2005.

On April 15, 2005, the Water District sent a letter to the Board certifying that it had posted the required notice to its employees and providing the Board with a list of its employees in the police officer classification. That list included 41 names.

On April 22, 2005, Sharon B. Wells, an agent for the Board, informed the parties (the Water District, the ICOP and the Local 7) by letter that there had been a sufficient showing of employee interest to further entertain the ICOP's petition, and she asked the parties to advise her in writing whether there were any issues of law or fact that warranted the hearing scheduled for Mary 23-24, 2005.

In a letter dated April 27, 2005, the Water District informed the Board that there were no

3

No. 1-06-1645

issues that would warrant a hearing in the matter.  Similarly, in a letter dated April 25, 2005, Local 7 agreed with the Water District stating that there were no issues warranting a hearing, and on April 29, 2006, it requested that the Board dismiss the ICOP's petition

In its April 29, 2006, letter Local 7 argued that pursuant to the Board's long-standing precedent, including the decision in International Brotherhood of Teamsters, Local 714 v. City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3015, No. L-RC-85-17 (ILLRB June 2, 1986) (hereinafter City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3015), in order to sever the "police officers" from the existing mixed bargaining unit, the ICOP was required to meet the "traditional severance standard" by demonstrating that the employees it sought to sever from the existing unit both: (1) shared a significant and distinct community of interest, and (2) had conflicts with other segments of the exiting bargaining unit or a record of ineffective and unresponsive representation of their peculiar interests.

The letter asserted that the police officers at issue had been historically represented by Local 7 dating back to 1967, when they were referred to as "security officers."[2] The letter explained that in January 1987, under an amendment of the collective bargaining agreement between Local 7 and the Water District, the "security officer" title was first changed, apparently

---

[2]In support of this contention, Local 7 attached: (1) correspondence dating back to July 14, 1967, specifically referencing "security officers" as members of Local 7; and (2) a copy of a collective bargaining agreement between Local 7 and the Water District effective between July 1, 1984, and June 30, 1985, referring to "security officers" as employees of the Water District.

4

in name only, to that of "police officer," and that it has remained "police officer" ever since.[3]  As such, Local 7 argued that because the Act was never intended to displace historical bargaining units, like the mixed unit represented by Local 7, the existing unit was "presumptively valid" under section 9 of the Act (5 ILCS 315/9 (West 2006)) unless and until a majority of all the unit members voted otherwise.

In addition, Local 7 asserted that the most recent collective bargaining agreement between Local 7 and the Water District was effective from July 1, 2003, to June 30, 2005, and governed the terms and conditions of employment of all of the employees in the bargaining unit, including police officers.[4]  Local 7's letter urged that under this bargaining agreement, the 51 police officers "enjoy identical or similar terms and conditions of employment as the other employees in the bargaining unit."  In addition, according to Local 7, they have significant daily interaction with other employees in the bargaining unit, and there is no evidence that Local 7 has ever been ineffective or unresponsive in its representation of them.

On May 2, 2005, John Clifford, a Board agent, informed the parties that as of that date he was to act as the administrative law judge (ALJ).  The ALJ explained that the hearing dates

---

[3]In support of this contention, Local 7 attached a copy of a transmittal letter for the board meeting of the Water District, dated January 13, 1987, indicating that the Water District and the Local 7 have mutually agreed to amend their current collective bargaining agreement, *inter alia*, to incorporate, the following changes: "the reclassification of security guard to police officer."

[4]In support of this contention, Local 7 attached a copy of that collective bargaining agreement.

would remain set for May 23-24, 2005, but informed the parties that their respective positions as to what standard should be applied to determine the right of the ICOP to sever the subgroup of 51 police officers from the existing bargaining unit were unclear. The ALJ specifically referenced the Board's decision in County of St. Clair v. Illinois Fraternal Order of Police Labor Council, 18 Pub. Employee Rep. (Ill.) par. 2015, No. S-UC-99-018 (ISLRB February 19, 2002) (hereinafter County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015), where the Board held that a union representing an entire bargaining unit containing both peace officers and non-peace officers could upon request sever the peace officers from the unit and continue to represent both.[5]

Accordingly, the ALJ asked the parties to address two specific issues. First, he asked the Water District if its letter indicating that there was no need for a hearing meant that it had no objection to the newly proposed unit, and he also asked the ICOP to explain what facts it wished to prove up, if any, showing that the Water District had not maintained a "continuous assent" to the current unit. Second, he asked the parties to explain what standard for judging severance should govern given that the existing unit was a "historical mixed unit."

On May 4, 2006, Local 7 responded in a letter to the ALJ, explaining that it believed that County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015, did not provide a lower standard for severance to be applied to the ICOP's petition than had been traditionally applied by the Board. Local 7 explained that County of St. Clair was a unique case, which dealt solely with the issue of whether the same union, which represented a combined unit of peace officers and nonpeace

_____

[5]We note that this decision by the Board will be discussed below in our discussion of the merits of the issues raised on appeal.

officers could sever its own unit, but still represent both the peace officers and nonpeace officers in separate units. As such, according to Local 7, County of St. Clair stood only for the right of a party to a collective bargaining relationship to seek severance of a mixed unit. However, according to Local 7, because in the present case neither Local 7 nor the Water District had filed a petition to change the composition of the unit, and because the ICOP was not a party to the underlying collective bargaining agreement with the Water District, County of St. Clair did not apply and there was no basis upon which to base the ICOP's severance argument.

As such, according to Local 7, severance could be obtained only if the ICOP met the requirements of the "traditional severance standard," as enunciated in City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3015. Local 7 reiterated its contention that under this standard, the ICOP's petition had to be dismissed because the collective bargaining agreement established the employees at issue shared the same terms and conditions of employment, the police officers had "significant daily interaction" with other employees, and there was no evidence that Local 7 had engaged in the type of "ineffective or unresponsive representation" that would warrant severance.

On May 4, 2005, the Water District responded to the ALJ explaining that its prior letter was merely an "attempt to remain neutral" in the labor dispute between the ICPO and Local 7. The Water District further added that it had not withdrawn its consent to Local 7's representation of the existing unit. In addition, the Water District agreed with Local 7 that the less stringent severance standard articulated in County of St. Clair did not apply in the cause at bar, because unlike that case, here neither of the parties to the existing collective bargaining agreement (the Water District and the Local 7) had withdrawn consent to the current mixed bargaining unit.

On May 5, 2005, the ALJ wrote to the parties with new proposed hearing dates. However, he suggested that he might elect to dismiss the petition instead of conducting a hearing because it appeared that the ICOP could not make out the "traditional standard" for severance under the Board's precedent. The ALJ concluded that the only real question was whether a different standard similar to the one adopted in County of St. Clair for employers and the current bargaining units should be extended to a third party seeking severance or separation of a mixed unit. The ALJ stated that having the parties build a record where the controlling standards were unclear and disputed would be a "risky and expensive proposition." Therefore he suggested the "cleaner and better result" for the parties would be a straight dismissal, which would allow a direct appeal to the Board on the issue.

On May 9, 2005, the Water District wrote a letter to the ALJ stating that it believed that the traditional severance standard should govern the ICOP's petition. The Water District further asserted that the ICOP could not meet that standard because all the employees shared a community of interest with one another, and there was no "record of unresponsive or ineffective representation" by the incumbent union, Local 7. The Water District explained that there was a 21-year bargaining history between Local 7 and the Water District, dating back to the parties' first collective bargaining agreement in 1984.

On May 9, 2005, the ICOP sent a letter to the ALJ indicating that its position did not change, even thought the Water District had not withdrawn its consent to bargain with Local 7. In that letter the ICOP urged the application of a "less stringent standard" for severance than the traditional one.

8

On May 10, 2006, Local 7 sent a letter to the ALJ again urging the dismissal of the ICOP's petition and reasserting all of its previously raised arguments.

On May 11, 2006, the ALJ wrote to the parties informing them that a hearing, if it were to occur, would be scheduled for June 21, 26, and 27, 2005. The ALJ, however, reiterated his belief that dismissing the petition for immediate review by the Board "may be the best course of action." He further invited the ICOP to set out in detail the standard it proposed to replace the standard enunciated in County of St. Clair to be applied to third-party petitions for severance of existing mixed bargaining units.

In addition, on June 14, 2005, the ALJ invited the parties, if they wished to do so, to "amplify" their respective positions and make an offer of proof, along with their respective positions. The letter specifically stated:

"This is in no way a reproach to any statement previously filed; I merely want to make sure that we afford all parties the fullest opportunity to tell the Board what standard they think important [and] the facts they would rely upon."

The ALJ further invited counsel for the Water District and Local 7 to work together to "create the stipulations necessary" to establish that the employees at issue are, in fact, "peace officers" under the Act.

On June 22, 2005, counsel for the ICOP wrote to the ALJ asserting that there was no dispute among the parties as to whether the police officers were "peace officers" pursuant to section 14(k) of the Act (5 ILCS 315/14(k) (West 2006)). In support of this statement, the ICOP attached a letter written by the ICOP to the Water District, dated September 28, 2004, in which

9

the ICOP urged the Water District to permit the officers to carry concealed firearms when off duty pursuant to the Law Enforcement Officers Safety Act of 2004 (Pub. L. 108-277, eff. July 22, 2004), and which revealed that the parties agreed that the police officers employed by the Water District were "peace officers" within the meaning of the Act.

On June 29, 2005, the ICOP filed its official position statement with the Board, arguing first that the employees could meet the traditional standard for severance and adopting the arguments set out in its earlier letters. The ICOP argued that because County of St. Clair held that mixed units of police/nonpolice were "presumptively invalid" under the Act, the ICOP had met the first criterion of traditional severance, namely, that the officers and employees "shared a significant and distinct community of interest."

With respect to the second criterion of traditional severance, *i.e.*, Local 7's alleged ineffectiveness in representing the police officers employed by the Water District, the ICOP argued that a review of the current collective bargaining agreement revealed that Local 7 had failed to secure basic contractual provisions that are "included in nearly every other police officer collective bargaining agreement." Some of the missing provisions that the ICOP complained about included provisions governing: investigations, police discipline, court-appearance compensation, reimbursement for uniforms and body armor, 24-hour/3-shift work, and specialty pay. The ICOP asserted that these were "standard" provisions in police agreements and that the Board could confirm this assertion by examining any of the "myriad of collective bargaining agreements" that had been filed with the Board in other units involving police employees. The ICOP also pointed out that the sole provision in the current collective bargaining agreement

between the Water District and Local 7 dealing specifically with police officers is a provision requiring random drug testing only of police officers, and not of any other employee of the Water District. According to the ICOP, this provision was detrimental rather than beneficial to the police officers. The ICOP finally argued that, unlike itself, Local 7 had failed to support the police officers' right to carry concealed weapons when off duty.

As an alternative argument, the ICOP argued that the traditional standard for severance should be modified. The ICOP reiterated that according to County of St. Clair a mixed unit of police/nonpolice employees is presumptively invalid. It further argued that continuing to allow Local 7 to be the exclusive representative of the mixed bargaining unit "indefinitely" represented poor public policy. Specifically, the ICOP asserted that although police are traditionally represented by specialty "police unions," such police unions could never seek to represent a mixed unit because charters of police unions typically do not permit representation of nonpolice officers. As such, according to the ICOP the traditional severance requirement has the effect of unfairly "trapping the Water District officers in their existing representation."

Instead of the traditional severance standard, the ICOP proposed the following less stringent standard. It contended that when police employees petition to sever themselves from a mixed unit containing nonpolice employees, even without the consent of the current bargaining representative, an election should be ordered if: (1) the third-party union petitioning on their behalf can show that 30% of the proposed unit desires severance, and (2) there is, at the time of the petition, no contract or certification bar. The ICOP asserted that it met the criteria for this standard.

11

In response, on July 14, 2005, Local 7 filed its position statement. In that statement, Local 7 first asserted that the mere fact that the existing unit contained both police and nonpolice employees was not a sufficient reason under section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)) to grant a rival union "automatic" severance. Local 7 cited three prior decisions by the Board, in which the Board had upheld a mixed unit of police/nonpolice employees, and denied severance petitions.[6]

In addition, Local 7 argued that the ICOP had failed to present any evidence that it had met the traditional severance standard, and that therefore the ICOP had failed to raise a question of law or fact that would necessitate a hearing in the instant matter. With respect to the first prong, although Local 7 admitted that police officers were unique in that they provide a different service to the Water District and enjoy a different set of rights under the Act and under many state laws, it asserted that this fact alone is not determinative of the community of interest

---

[6]Those cases are State of Illinois Department of Central Management Services v. Illinois Fraternal Order of Police Council, 3 Pub. Employee Rep. (Ill.) par. 2026, No. S-RC-258 (ISLRB March, 9, 1987) (hereinafter Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026); (Metropolitan Police Ass'n, Local 54 v. Lake County Sheriff's Department, Ill. State Labor Relations Bd., 6 Pub. Employee Rep. (Ill.) par. 2037, No. S-RC-90-19 (ISLRB July 20, 1990) (hereinafter Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037); and City of Chicago Aviation Security Officers v. City of Chicago, 9 Pub. Employee Rep. (Ill.) par. 3008, No. L-RC-92-033 (ILLRB April 16, 1993) (hereinafter City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008).

question. Rather, Local 7 argued the appropriate inquiry is whether those officers share a community of interest with other employees in the existing bargaining unit as opposed to a separate, distinct and singular community of interest apart form the larger unit. Local 7 reiterated that a review of the existing collective bargaining agreement revealed that the terms and conditions of employment for police officers were similar if not identical to the terms and conditions for other employees in the bargaining unit, and that police officers have significant daily interaction with other employees in the bargaining unit.

With respect to the second prong, Local 7 asserted that the ICOP failed to provide any evidence indicating a conflict between the police officers and the remainder of the unit that would necessitate a hearing. Specifically, Local 7 argued that the ICOP presented no evidence to even suggest that Local 7 had, *inter alia*, abandoned the police officers, separated them from the rest of the unit, failed to seek a comparable wage increase for the police officers, refused to give the officers full membership status in the union, failed to offer bargaining proposals on behalf or the officers, failed to represent police officers in their grievances, or failed to meet with them for the purpose of discussing bargaining proposals.

On July 14, 2005, the ICOP supplemented its position statement with a letter in which it cited to two more instances of Local 7's alleged ineffective representation of the police officers. First, the ICOP apparently contended that Local 7 sent an inappropriate bargaining representative to a bargaining session to negotiate on behalf of the officers.[7] Second, the ICOP asserted that

---

[7]Specifically, the ICOP asserted:

"Relative to the contracts that cover the police force of the [Water District], with

13

Local 7 had allowed two grievances filed by the police officers to be postponed for more than nine months. The ICOP further amended its proposed less stringent severance standard, asserting that the standard should also require that the petitioning union be, as it is, a police union "by charter."

On August 17, 2005, the ICOP sought to further amend its original position statement and filed an addendum to that position statement with the Board. In this addendum, the ICOP argued that in order to prove that it met the first prong of the traditional severance standard, it would call two witnesses, "the Chief of Police," and "a police officer employed by the Water District," to establish, *inter alia*, that the "police officers" employed by the Water District are "peace officers" under section 3(k) of the Act (5 ILCS 315/3(k) (West 2006)) and that the members of that police force do not "commingle" with other employees of the Water District, especially because the police force is responsible for investigating any unlawful behavior by other Water District employees.[8]

With respect to the second prong of the traditional severance standard, the ICOP asserted

---

the exclusive representative being [Local 7], a number of police officers had requested to be part of contract negotiations (*i.e.*, those in the bargaining unit). Said police officers were not made a part of said negotiations but said [Water District] sent a lieutenant (*i.e.*, not a part of the bargaining unit) to the table to represent the police officers!"

[8]In this regard, the ICOP specifically stated: "the police officers ***, for all intents and purposes, *** do security checks of the rest of the employees of the unit who enter facilities of the [Water District]."

that it would call Timothy P. Healy, president of Local 7 and Thomas Longini, Local 7's assigned representative for the police officers of the Water District, to testify that: (1) the police officers had no representative present at the negotiation of the current collective bargaining agreement; (2) the existing collective bargaining agreement contains no clause that in any way reflects the needs of police officers under a standard collective bargaining agreement for police, and (3) Local 7 had not advanced the officers' interests in carrying concealed weapons off duty by seeking a declaratory judgment from the circuit court to define the status of Water District police officers pursuant to the then newly enacted federal Law Enforcement Officers Safety Act of 2004 (Pub. L. 108-277, eff. July 22, 2004), which permitted "qualified law enforcement officers" and "qualified retired law enforcement officers" to carry concealed firearms.

On August 24, 2005, in response to the ICOP's contention that the police officers had no representative at the negotiation of the collective bargaining agreement, Local 7 submitted copies of letters sent to all of its stewards concerning the collective bargaining agreement negotiations, in which every steward, including Thomas Longini, the police officer's steward, was invited to discuss the pending contract negotiations and demands.

On September 8, 2005, the ICOP filed a "surrebuttal" in which it argued that Local 7 had waived two arguments by failing to deny them or respond to them in any manner in any of its pleadings: (1) the ICOP's argument that Local 7 had failed to represent the interests of the Water District's police officers in carrying concealed weapons off duty and (2) the ICOP's proposed less stringent standard for severing peace officers from a historically mixed bargaining unit.

On September 21, 2005, the ALJ sent the parties a letter asking for a clarification as to

whether the existing bargaining unit was a pre-Act "election unit," formed in 1984 just before the Act became effective, or a true "historical unit." The ALJ further stated that after his review of several labor contracts between the parties, he wanted an explanation of whether there were ever two distinct bargaining units of "police officers" and "watchmen" and, if so, when the two units merged. Finally, he asked the Water District to explain why it had changed the original job title of "security officer" to "police officer," and whether that title change was intended to signify a "real change" in the duties of the security-officer designation.

On October 13, 2005, the ICOP sent a letter to the ALJ responding to Local 7's assertion that the police officers were part of a "historical unit." The ICOP asserted that because the police officers were not part of the bargaining unit at the time of the adoption of the Act on July 1, 1984, the existing unit was not a "historical unit" under the Act.

On November 8, 2005, the ICOP wrote an additional letter to the ALJ explaining that until 1987 the police officers were classified as "security officers" and that, therefore, there was no "historical bargaining unit of police officers prior to the effective date of the [Act]," which was in 1984. The ICOP asserted that it would call on "reputable witnesses" to testify to this fact.

In that same letter, the ICOP also complained that while it had been told it needed to produce an affidavit in support of its offers of proof, Local 7 was allowed to make factual representations to the ALJ without such formal support. The ICOP suggested that it would not tender any affidavit in support of its factual assertions unless Local 7 was directed to do the same in support of its statements.

The ICOP further "emphatically disputed" Local 7's statement that in the past it had

gathered input from police officers of the bargaining unit before proceeding to negotiate with the employer. In support of this contention, the ICOP asserted that it would produce three police officers who would testify as witnesses at a hearing that: (1) police officers are not contacted for their input as to contract negotiations; (2) no meetings are held as to the police officers for such input; and (3) there were never any police officers involved in the development of proposals for the most recent negotiations. In addition, the ICOP stated that it would produce a list of contract clauses that it believes should have been, but were not, included in the collective bargaining agreement.

On December 26, 2005, the ICOP sent yet another addendum to it previous letter. In that addendum, the ICOP alleged the following facts: that none of the 51 police officers set out in the ICOP's petition had seen the proposals for the most recent collective bargaining agreement, that none were present for its ratification and that none of them voted for its passage. The ICOP asserted that it would produce witnesses at the hearing before the Board to corroborate these facts.

### 2. The ALJ's Recommended Decision and Order

On January 5, 2006, the ALJ filed his recommended decision and order, recommending that the petition be dismissed. In doing so, the ALJ, made the following relevant and undisputed findings of fact.

Since 1967, prior to the effective date of the Act, Local 7 has represented a bargaining unit composed of the Water District's employees. At the time the instant petition was filed, there were approximately 400 employees in the unit, of which 51 were peace officers. There was

17

sufficient evidence to show that the majority of these peace officers supported the position of the ICOP and sought severance from the existing mixed-bargaining unit.

The current collective bargaining agreement between Local 7 and the Water District covers all of the employees of the Water District, including the peace officers. A review of that collective bargaining agreement reveals that many terms and conditions of the peace officers' employment are similar, if not identical, to those applicable to nonpeace officers. According to the ALJ:

"[T]he peace officers have *** a given wage rate and in the second year of that agreement receive a wage increase. Too, peace officer shift rotations are set out specifically, but similar shift concepts are also set out for other classification involved in the [Water] District's 24 hour, seven day a week operations. Peace officers are specifically mentioned as being subject to random drug testing, whereas other employees are subject to testing upon reasonable suspicion of drug use. The same vacation, sick pay, personal leave, overtime compensatory time and holiday pay provisions apply to peace officers as to the non-peace officers in the unit. Health, dental and life insurance *** are applicable to peace officers on the same broad basis they are available to all other employees in the unit."

The ALJ next commented on the factual allegations and offers of proof made by the ICOP in its communications with the Board. The ALJ first found that the ICOP nowhere disputed that peace officers have "significant daily interaction with other employees in the unit."

The ALJ next commented on the ICOP's assertions with respect to Local 7's alleged

18

"ineffective and inadequate" representation of police officers. The ALJ first found no factual basis for ICOP's assertion that the current collective bargaining agreement contains no provisions commonly found in labor agreements covering peace officer units. In that respect, the ALJ found that although the ICOP contends that the current collective bargaining agreement should, but does not, contain provisions for "court time compensation" of police officers, for police uniforms, and body armor, the ICOP provides no evidence that in practice officers are not in fact paid for their court time, that they have no uniforms, or that they are not provided body armor. Similarly, the ALJ found that in the ICOP's assertion that the collective bargaining agreement does not provide for a "pay differential for those [officers] serving in investigations rather than patrol," the ICOP failed to even allege that such assignments are common in the Water District's police force.

The ALJ further found that the ICOP does not dispute the following facts regarding negotiations conducted by Local 7:

"First, historically Local 7 has bargaining committees which consist only of the president of Local 7 and its business representative. Hence, no employees in the unit are actually on the bargaining committee. Second, Local 7 sends a letter to each employee represented prior to commencing bargaining requesting that they submit proposals to the union which they wish presented in bargaining. Local 7 also conducts membership meetings and steward meetings for development of proposals, and such meetings are open to police officers on the same basis as other employees. The peace officers have a steward who is a peace officer, and that steward is invited to stewards' meetings

conducted by Local 7 and, in addition, has the same right to attend membership meetings as any other member."

The ALJ noted that although the ICOP contended that the police officers in the unit had filed grievances that were resolved only after long delays, it never alleged that nonpeace officers' grievances are treated differently.

The ALJ then made the following analysis and conclusions of law. The ALJ first found that the ICOP had failed to make factual allegations sufficient to meet the Board's "traditional" severance test. Specifically, the ALJ concluded that the ICOP had not made any suggestion that it could meet its burden to show that the group to be severed was a "particularly distinct and homogenous one that has suffered unresponsive or disparately poor representation in the existing unit." The ALJ specifically found that there could be no "inherent" significant and distinct community of interest between the police officers and the other employees of the Water District because the Act specifically permits for mixed peace officer/nonpeace officer units. The ALJ further noted that in the entire history of the Board, a group of employees had successfully been severed under the traditional standard only once (see Independent Bridge Tenders Organization v. City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3022, No. L-RC-85-15 (ILLRB September 17, 1986) (hereinafter Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022) where over a period of 20 years the bargaining representative had essentially abandoned the group of employees seeking severance. The ALJ finally found that many of the deficiencies alleged by the ICOP in the collective bargaining agreement had not been shown to be material.[9]

_____

[9]These included, *inter alia*, the ICOP's contention that (1) the current collective

The ALJ next rejected the ICOP's alternative contention that some lesser standard other than the "traditional" standard should be applied.

The ALJ further informed the parties that pursuant to the Board's rules they could file exceptions to his recommended decision and order. On February 15, 2006, not having received any exceptions from the parties, the Board declared the ALJ's recommended decision and order to be "final and binding," but "non-precedential."

However, on February 21, 2006, the ICOP filed a motion for extension of time to file its exceptions, and on March 22, 2006, the Board granted that motion. In its exceptions to the ALJ's recommended decision and order, the ICOP essentially raised every argument that it had raised before the ALJ since its initial filing of the petition for representation. In support of its arguments, the ICOP included as attached exhibits every previous correspondence it had filed with the Board with respect to its petition. On April 6, 2006, Local 7 filed its response to ICOP's exceptions.

On May 19, 2006, the Board issued its decision and order upholding the ALJ's recommended decision and order and adopting it as the Board's final administrative decision. In

---

bargaining agreement contained no provisions regarding investigations of officers leading to possible discipline or provisions regarding cause for dismissal; and (2) the 2004 failure by Local 7 to take "any strong and pronounced position that the police force of the [Water District] were peace officers," within he meaning of the Law Enforcement Officers Safety Act of 2004 (Pub. L. 108-277, eff. July 22, 2004), which would have then permitted the peace officers to carry concealed firearms off duty.

doing so, the Board noted that it had reviewed the record, the exceptions and the responses, and that it agreed with the recommendations of the ALJ to dismiss the ICOP's petition. The ICOP now appeals.

## II. ARGUMENT

On appeal, the ICOP contends that the Board improperly dismissed its petition under the traditional severance standard without first conducting a hearing pursuant to section 9(a) of the Illinois Labor Relations Act (Act) (5 ILCS 315/9(a) (West 2006)). The ICOP contends that there was sufficient evidence presented to the Board in the course of the investigation to warrant a hearing, and that the Board therefore erred when it found that the ICOP had failed to present such evidence. The ICOP further argues that the Board erred when it refused to use the ICOP's proposed less stringent standard for severing police employees from an existing unit of both peace

officers and nonpeace officer employees. For the reasons that follow, we disagree.

### 1. Dismissal Under the Traditional Test

We first address the ICOP's contention that the Board erred when it dismissed its petition for representation under the traditional severance standard without first conducting an evidentiary hearing. The ICOP specifically contends that the Board erred when it found that there was no "reasonable cause" to believe a question of representation existed under the traditional severance standard, so as to require a hearing pursuant to section 9 of the Act (5 ILCS 315/9 (West 2006)). For the reasons that follow, we disagree.

Before addressing the merits of this issue, we first address the applicable standard of

22

review. Our supreme court has held that "the standard of review applicable to the agency's decision depends upon whether the question presented is one of fact or law." City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998). An administrative agency's findings on questions of fact are deemed to be *prima facie* true (735 ILCS 5/3-110 (West 2006)), and a reviewing court will reverse the Board's factual determinations only if it concludes that they were contrary to the manifest weight of the evidence. Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647, 653 (2001) ("[T]he decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident"). The Board's conclusions of law, however, are not entitled to the same deference, and we review them *de novo*. Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 653. If the question presented for review is one of mixed law and fact, then a yet third standard applies, and we review the Board's decision to determine if it was clearly erroneous. City of Belvidere, 181 Ill. 2d at 204, 692 N.E.2d at 302; see also Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 654.

In the present case, the ICOP contends that review should be *de novo*, while the Board and Local 7 contend that a clearly erroneous standard applies. We find that as between the two, the clearly erroneous standard is more appropriate. While the ICOP may be correct that the test to determine whether a hearing is required under the Act is a legal one, involving whether the Board had "no reasonable cause" to believe that a question of representation existed (see 5 ILCS 315/9 (West 2006)), as shall be more fully explained below, that test must be applied to and

depend upon the sufficiency of facts presented to the Board during its investigation of the representation/election petition. See 5 ILCS 315/9 (West 2006); see 80 Ill. Adm. Code §1210.100(a), as amended by 28 Ill. Req. 4172, eff. February 19, 2004. As such, our review of the Board's finding would not be *de novo*; rather the "clearly erroneous" standard of review applies. See City of Belvidere, 181 Ill. 2d at 205, 692 N.E.2d at 302; see also Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 654; Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 143, 849 N.E.2d 349, 358 (2006).

Under this standard an agency's decision will not be upheld only where "the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger Service, Inc., v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 282 (2002), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 2d 746, 766, 68 S. Ct. 525, 542 (1948) ; see also Illinois Fraternal Order Of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 654 ("[w]hen mixed questions of law and fact are involved, requiring an examination of the legal effect of a given set of facts, the [Board's] resolution of such questions will be upheld if 'reasonable, consistent with labor law and based on findings supported by substantial evidence' "), quoting Northwest Mosquito Abatement District v. Illinois State Labor Relations Board, 303 Ill. App. 3d 735, 748, 708 N.E.2d 548 (1999).

We next turn to the merits of the parties' contentions. In the present case, the ICOP first argues that the Board did not follow proper procedure in dismissing its petition. Specifically, the ICOP contends that summary judgment proceedings should have applied in this instance, and

that the Board should not have been permitted to dismiss its petition without first conducting a hearing, where the ICOP's pleadings provided sufficient evidence to show the existence of "[a] genuine issue of material fact." 735 ILCS 5/2-1005 (West 2006). On the other hand, the Board and Local 7 contend that summary judgment proceedings do not apply to the cause at bar and that, instead, the Board followed proper investigatory and dismissal procedures as defined by the Act (5 ILCS 315/1 *et seq.* (West 2006)) and the Board's own rules and regulations (80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004). For the reasons that follow, we agree.

We first note that section 9(a) of the Act governs elections and states in pertinent part:

"Whenever in accordance with such regulations as may be prescribed by the Board a petition has been filed:

(1) by a public employee or group of public employees or any labor organization acting in their behalf demonstrating that 30% of the public employees in an appropriate unit (A) wish to be represented for the purposes of collective bargaining by a labor organization as exclusive representative, or (B) asserting that the labor organization which has been certified or is currently recognized by the public employer as bargaining representative is no longer the representative of the majority of public employees in the unit; or

(2) by a public employer alleging that one or more labor organizations have presented to it a claim that they be recognized as the representative of a majority of the public employees in an appropriate unit,

25

the Board *shall investigate* such petition, *and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing* upon due notice." (Emphasis added.) 5 ILCS 315/9(a) (West 2006).

Therefore, unlike in summary judgment proceedings where evidence cannot be weighed, the Act on its face provides for the evaluation of the evidence gathered and a determination of its sufficiency before an appropriate hearing must be held. See 5 ILCS 315/9(a) (West 2006).

This interpretation is fully consistent with and borne out by the Board's own regulations promulgated to implement section 9(a) of the Act. See 80 Ill. Adm. Code §1210.100(a), as amended by 28 Ill. Req. 4172, eff. February 19, 2004. These regulations provide for a procedure under which inappropriate petitions can be dismissed without the need for a hearing. As section 1210.100(a)(6) states in relevant part:

"Upon receipt of the [representation] petition, the Board or its agent shall investigate the petition. If, for any reason during the investigation, the Board or its agent discovers that the petition may be inappropriate, the Board or its agent may issue an order to show cause requesting that the petitioner provide sufficient evidence to overcome the inappropriateness. Failure to provide sufficient evidence of the petition's appropriateness can result in the dismissal of the petition." 80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004.

The regulations further provide:

"After the investigation, the Executive Director *shall* dismiss a petition, or the Administrative Law Judge *shall* recommend to the Board that a petition be dismissed,

26

when a petition has been filed untimely; when *the bargaining unit is clearly inappropriate*; when the showing of interest is not adequate; when the employer is not covered by the Act; when the employees are not covered by the Act; *or for any other reason there is no reasonable cause to believe that a question of representation exists.*" (Emphasis added.) 80 Ill. Adm. Code §1210.100(a)(7), as amended by 28 Ill. Req. 4172, eff. February 19, 2004.

Our courts have repeatedly held a reviewing court must give deference to the administrative agency's interpretation of the statute it was created to enforce. County of Will v. Labor Relations Board, 219 Ill. App. 3d 183, 185, 580 N.E.2d 884, 885 (1991). "A significant reason for deferring to an agency's interpretation of its enabling statute is that the agency makes informed decisions based on its experience and expertise." County of Will, 219 Ill. App. 3d a 185, 580 N.E.2d at 885; see also Water Pipe Extension, Bureau of Engineering v. Illinois Local labor Relations Board, 252 Ill. App. 3d 932, 936, 625 N.E.2d 733, 735 (1993) (the Board's interpretation of its own standards and regulations is accorded deference as "courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise"; this policy is consistent with the principle that "administrative agencies must have wide latitude to adopt regulations reasonably necessary to effectuate their statutory functions"); see also Decatur Federation of Teachers v. Educational Labor Relations Board, 199 Ill. App. 3d 190, 197, 556 N.E.2d 780, 784-85 (1990) ("[c]ourts may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary or capricious manner or is against the manifest weight of the evidence. [Citation.] ***

27

[C]onsiderable deference must be given the Board because of the Board's expertise in *** labor matters. [Citation.] To do otherwise would, for practical purposes, transform appellate review into trial *de novo*. [Citation.] Indeed, such a result would appear to substitute our general knowledge for the expertise required of Board members by *** the Act [citation]").

In addition, we agree with the Board that the language of section 9 of the Act permitting prehearing dismissals substantially parallels the language of section 9(c)(1)(A) of the National Labor Relations Act (NLRA) (29 U.S.C.§159(c)(1)(A) (1982)), which has been construed as " 'an "administrative expedient[ ] only, adopted to enable [the Board] to determine for itself whether or not further proceedings are warranted, and to avoid needless dissipation of the Government's time, effort and funds" through investigation of frivolous petitions. [Citations.]' " See County of Kane v. Illinois State Labor Relations Board, 165 Ill. App. 3d 614, 619, 518 N.E.2d 1339, 1342 (1988), quoting NLRB v. Metro Truck Body, Inc., 613 F. 2d 746, 749 (9th Cir. 1979). In that regard, we note that even though we are not bound by a federal court's interpretation of a federal statute, we find the aforementioned characterization of the dismissal procedures under the NLRA relevant to our understanding of the dismissal procedures under the Illinois Act. See County of Kane, 165 Ill. App. 3d at 620, 518 N.E.2d at 1342 (holding that "when the State legislature passes a State statute based upon a [f]ederal statute, the statue can presumably be interpreted in conformity with the decisions of the [f]ederal courts rendered prior to the adoption of the statute," and it may be presumed that the legislature adopted the language with knowledge of the construction previously enunciated in the federal courts).

Consequently, under the aforementioned principles, we find that in the present case, the

No. 1-06-1645

regulations promulgated by the Board pursuant to section 1210.100 of title 80 of the

Administrative Code (80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req. 4172 eff.

February 19, 2004) vested the ALJ with express authority to dismiss the ICOP petition, or

recommend that the petition be dismissed, without a hearing if after his investigation, he found

that "the petition was clearly inappropriate" or there was "no reasonable cause" to believe that a

question of representation existed.[10]

The ICOP nevertheless cites to Cano v.Village of Dolton, 250 Ill. App. 3d 130, 620

N.E.2d 1200 (1993), contending that the Board's administrative rule, allowing the Board to

dismiss a petition if its investigation shows that the petition is inappropriate (80 Ill. Adm. Code

§1210.100(a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004), must necessarily

invoke the same standards as would be applied in the circuit courts to resolve a motion for

_____

[10]We observe here that on three occasions in its brief, the ICOP parenthetically notes that

the dismissal of its petition without a hearing is "a violation of due process." However, the ICOP

makes no argument with respect to this contention, nor does it cite to any case law to support it.

As such, because the ICOP has failed to comply with the requirements of Supreme Court Rule

341(h)(7), we find that the ICOP has waived this contention, if it be a contention at all, for

purposes of this appeal. See 210 Ill. 2d R. 341(h)(7) (providing that arguments made in support

of issues raised on appeal "shall contain the contentions of the appellant and the reasons therefor,

with citation of the authorities and the pages of the record relied on" and noting that "[p]oints not

argued are waived" for purposes of appeal); see also People v. Ramirez, 98 Ill. 2d 439, 472, 457

N.E.2d 31, 47 (1983).

29

summary judgment under section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2006)). The ICOP therefore contends that the Board erred by not imposing a summary judgment standard on the parties and by not requiring both parties, as opposed to merely the ICOP, to file affidavits or evidence in support of their positions. For the reasons that follow, we find that case inapposite.

Cano involved the proper standard for resolving a miscaptioned "summary judgment motion" brought before the Department of Human Rights in an age discrimination case pursuant to the Illinois Human Rights Act (Ill. Rev. Stat. 1991, ch. 68, par. 1-103). Cano, 250 Ill. App. 3d at 132, 620 N.E.2d at 1202. The court in Cano first found that since the motion was not brought before any circuit court, but rather before the Human Rights Commission (HRC), the rules of civil procedure governing summary judgment (see Ill. Rev. Stat. 1991, ch. 110, par. 2-1005) were inapplicable. Cano, 250 Ill. App. 3d at 132, n.1, 620 N.E.2d at 1203, n.1. The court then stated that it would assume that in seeking "summary judgment," the movant was in fact referring to the summary decision procedure available to the Human Rights Commission by the controlling statutory scheme, *i.e.*, section 8-106.1 of the Illinois Human Rights Act (Ill. Rev. Stat. 1989, ch. 68, par. 8-106.1), which permitted an investigator to issue a recommended order without a hearing "if the pleadings and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a recommended order as a matter of law." Cano, 250 Ill. App. 3d at 137, citing Ill. Rev. Stat. 1989, ch. 68, par. 8-106.1.

The court then held that because the language of the Illinois Human Rights Act governing summary orders (Ill. Rev. Stat. 1989, ch. 68, par. 8-106.1) paralleled the language of the Code of

No. 1-06-1645

Civil Procedure governing motions for summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2-1005), the HRC had properly applied the rules of summary judgment in reaching its decision. Cano, 250 Ill. App. 3d at 138. In doing so, the court wrote:

>    "A summary decision is the administrative agency procedural analogue to the motion for summary judgment in the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2-1005.) Because of the similarities of the two, it would seem appropriate to employ the case law which has grown out of the summary judgment motion practice when reviewing the propriety of such an order on direct review, the only difference being that while this court reviews motions for summary judgment *de novo*, (see Myers v. Health Specialists, S.C., (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 630), the Human Rights Act empowers this court to reverse a decision made by HRC only if it is against the manifest weight of the evidence. Ill. Rev. Stat. 1991, ch. 68, par. 8-111(A)(2)." Cano, 250 Ill. App. 3d at 138.

Unlike in Cano, in the present case, the language of section 9(a) of the Act (5 ILCS 315/9(a) (West 2006)), as well as the procedures outlined in section 1210.100 of title 80 of the Administrative Code (80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004) explaining how section 9(a) is to be applied, in no way parallel the rules of summary judgment articulated in section 2-1005 of the Code of Civil Procedure. See 5 ILCS 315/9(a) (West 2006) ("the Board *shall investigate* such a petition, *and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing* upon due notice" (emphasis added)); 80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req.

31

4172, eff. February 19, 2004 ("Upon receipt of the [representation] petition, the Board or its agent shall investigate the petition. If, for any reason during the investigation, the Board or its agent discovers that the petition may be inappropriate, the Board or its agent may issue an order to show cause requesting that the petitioner provide sufficient evidence to overcome the inappropriateness. Failure to provide sufficient evidence of the petition's appropriateness can result in the dismissal of the petition. ***After the investigation, the Executive Director *shall* dismiss a petition, or the Administrative Law Judge *shall* recommend to the Board that a petition be dismissed, when a petition has been filed untimely; when *the bargaining unit is clearly inappropriate*; when the showing of interest is not adequate; when the employer is not covered by the Act; when the employees are not covered by the Act; *or for any other reason there is no reasonable cause to believe that a question of representation exists*" (emphasis added)); but see 735 ILCS 5/2-1005 (West 2006) ("if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Moreover, unlike in a summary judgment proceeding, under the administrative regulations in the cause at bar, during his investigation of the petition, the ALJ was explicitly permitted to require *only* the petitioning party to provide the Board with sufficient evidence to overcome the ALJ's finding that the petition was inappropriate, and to dismiss the petition if the petitioner failed to provide such evidence. See 80 Ill. Adm. Code §1210.100(a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004. As such we find Cano, clearly inapplicable to the cause at bar, and conclude that the Board could properly dismiss the ICOP's petition without a hearing if after its

investigation, it found that there was "no reasonable cause to believe" a question of representation existed. See 80 Ill. Adm. Code §1210.100(a)(7), as amended by 28 Ill. Req. 4172, eff. February 19, 2004.

Thus, we next consider whether such a finding by the Board in this case was clearly erroneous. The Board first found that because the ICOP wanted to represent 51 peace officers represented since 1967 by Local 7 within a bargaining unit of approximately 400 employees of the Water District, the ICOP petition essentially sought severance of "an existing recognized unit." As such the Board applied the "traditional severance" standard as enunciated in City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3015. The Board next found that the ICOP failed to provide it with sufficient factual information to meet the requirements of the "traditional severance" test and that therefore there was no reasonable cause to believe a question of representation existed warranting a hearing. For the reasons that follow, we find that the Board's conclusions were not clearly erroneous. City of Belvidere, 181 Ill. 2d at 205, 692 N.E.2d at 302.

We first note that this court has previously made clear that a subgroup of a bargaining unit is not entitled to separate representation simply because it is a more appropriate bargaining unit, so long as the existing bargaining unit is itself appropriate. See Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 744, 745 N.E.2d at 660. In Illinois Fraternal Order Of Police, this court upheld the Board's refusal to break up an existing larger bargaining unit and replace it with the incumbent union, holding:

> "Section 9(b) [of the Act (5 ILCS 315/9(b) (West 2006))] *does not require that a*
> *proposed unit be the most appropriate unit. Rather, it requires that the unit be*

33

*appropriate*." (Emphasis added.) Illinois Fraternal Order of Police Labor Council, 319

Ill. App. 3d at 743, 745 N.E.2d at 659.

Under this principle it appears that to warrant severance from an existing bargaining unit, the

petitioning group must not only establish that the proposed unit is appropriate, but also that the

existing bargaining unit is not. See Illinois Fraternal Order of Police Labor Council, 319 Ill.

App. 3d at 743, 745 N.E.2d at 659.

Consistent with this holding, in construing its duties under section 9 of the Act (5 ILCS

315/9 (West 2006)), the Board has traditionally disfavored severance of employees from existing

bargaining units because of "the policy against disrupting existing stable bargaining

relationships."[11]  See County of Peoria & Sheriff of Peoria County v. Illinois Sate Labor

Relations Board, 305 Ill. App. 3d 827, 834-35, 713 N.E.2d 745, 749-50 (1999); see also, *e.g.*,

---

[11]We note that the language of section 9 of the Act (5 ILCS 315/9 (West 2006)) itself

reflects the intent of the legislators to maintain collective bargaining stability.  See 5 ILCS

315/9(b) (West 2006) ("in cases *** where the employer has recognized the union as the sole and

exclusive bargaining agent for a specified existing unit, the Board *shall* find the employees in the

unit then represented by the union pursuant to the recognition to be the appropriate unit"

(emphasis added)); see also 5 ILCS 315/9(c) (West 2006) ("[n]othing in this Act shall interfere

with or negate the current representation rights or patterns and practices of labor organizations

which have historically represented public employees for the purpose of collective bargaining

*** unless a majority of the employees so represented express a contrary desire pursuant to the

procedures set forth in this Act").

No. 1-06-1645

Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037; Watley & Holcomb v. Chicago Crossing Guards Ass'n & the City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3009, No. L-RD-85-08 (ILLRB April 17, 1986) (hereinafter Chicago Crossing Guards Ass'n, 2 Pub. Employee Rep. (Ill.) par. 3009, at IX-33) (noting that "the fundamental objective of the Act [is] peace and stability in bargaining relationships"). As such, the Board has been very reluctant to find severance appropriate, in the absence of an incumbent union's near-abandonment of the petitioned-for employees. See *e.g*., Cook County Sheriff's Enforcement Ass'n v. County of Cook & Sheriff of Cook County, 16 Pub. Employee Rep. (Ill.) par. 3003, No. L-RC-99-026 (ILLRB October 12, 1999) (hereinafter County of Cook & Sheriff of Cook County,16 Pub. Employee Rep. (Ill.) par. 3003); Rundle v. Chicago Park District, 6 Pub. Employee Rep. (Ill.) par. 3006, No. L-RD-89-030 (ILLRB February 5, 1990) (hereinafter Chicago Park District, 6 Pub. Employee Rep. (Ill.) par. 3006); National Pharmacists Ass'n v. County of Cook, 7 Pub. Employee Rep. (Ill.) par. 3028, No. Order L-RC-91-008 (ILLRB June 21, 1991) (hereinafter National Pharmacists Ass'n, 7 Pub. Employee Rep. (Ill.) par. 3028); County of Macon, 17 Pub. Employee Rep. (Ill.) par. 2042, No. S-RD-01-004 (ISLRB July 23, 2001) (hereinafter County of Macon, 17 Pub. Employee Rep. (Ill.) par. 2042), but see Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par.3022 (the only case where the Board permitted severance of an existing historical bargaining unit).

Consequently, the Board has created a two-prong test to determine whether severance of a subgroup from an already existing larger bargaining unit is appropriate. Under this test, a petitioner seeking severance must meet a significant burden by demonstrating that the employees

to be severed: (1) share a significant and distinct community of interest; and (2) have had conflicts with other segments of the existing bargaining unit or a record of ineffective and unresponsive representation of their peculiar interests by the existing unit's bargaining agent. See Chicago Park District, 6 Pub. Employee Rep. (Ill.) par 3006; Chicago Crossing Guards Ass'n, 2 Pub. Employee Rep. (Ill.) par. 3009; Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022. "The standard is in the conjunctive so that both parts must be met in order to allow the severance." County of Cook & Sheriff of Cook County, 16 Pub. Employee Rep. (Ill.) par. 3003, at XI-5.

With respect to the first prong of that standard, the Board has long maintained that the appropriate inquiry is whether the group to be severed is so distinct, homogenous and singular so as to have a separate identity and community of interest from the employees in the already existing larger bargaining unit. See Chicago Park District, 6 Pub. Employee Rep. (Ill.) par. 3006 (under the first prong of the traditional severance standard, the petitioner " 'must show more than simply that [the group to be severed] could constitute an appropriate unit in the abstract, if no broader unit already existed.' [Citation.] Rather, it must be shown that the unit to be severed has a 'distinct, homogeneous and separate identity' *** in comparison with *** the larger unit"). In applying this principle, the Board has repeatedly held that even where the members of the proposed unit share certain commonalities and traits, the first prong of the traditional severance standard is nevertheless not met where these same members "share a broad-based functional purpose and have common employment conditions and benefits" with the members of the already existing larger bargaining unit. See *e.g.*, County of Cook & Sheriff of Cook County, 16

No. 1-06-1645

Pub. Employee Rep. (Ill.) par. 3003, at XI-5; see also Chicago Crossing Guards Ass'n, 2 Pub.

Employee Rep. (Ill.) par. 3009; National Pharmacists Ass'n, 7 Pub. Employee Rep. (Ill.) par.

3028.

While here argument can be made that because the members of the Water District's

police force provide a different service to the Water District from the other members of Local 7

(including, *inter alia*, fireman-oilers, principal storekeepers, laborers, patrol boat operators,

material handlers, and pollution control technicians), they are more homogenous and inherently

different from nonpeace officers so as to have a separate community of interest, we nevertheless

must also consider that the peace officers and nonpeace officers in the bargaining unit essentially

share common employment conditions and benefits, which may well establish sufficient

commonality between the two groups so as not to require severance.

The record reveals that the police employees are retained to service the safety

requirements of the Water District premises and as such function as any other employee segment

designed to promote the overall function of the Water District. Moreover, a review of the

collective bargaining agreement between Local 7 and the Water District demonstrates that the

terms and conditions of employment for peace officers are similar, if not identical to the terms

and conditions of employment for nonpeace officers. First, the collective bargaining agreement

reveals that the contract covers all of the employees of the Water District, including the peace

officers. In addition, the collective bargaining agreement sets out the pay rates and shift rotations

for all employees, including peace officers. Moreover, the same vacation, sick pay, personal

leave, overtime, compensatory time and holiday pay provisions apply to all Water District

37

employees, including peace officers. Likewise, under the agreement, health, dental and life insurance are available to peace officers on the same basis as they are available to nonpeace officers.

Notwithstanding, even if the ICOP's petition has satisfied the first prong of the traditional standard, it would nevertheless fail to provide sufficient evidence to establish the second prong of that test. Chicago Park District, 6 Pub. Employee Rep. (Ill.) par. 3006 PERI ¶ 3006; Chicago Crossing Guards Association, 2 Pub. Employee Rep. (Ill.) par. 3009; Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022.

As already noted above, in order to satisfy the second prong of the traditional severance standard, the petitioning party must show that the employees seeking severance have had dominant interests that are incompatible with the interests of the larger unit and, as such, have conflicts with other segments of the existing bargaining unit, or that the existing bargaining representative has a record of ineffective and unresponsive representation of their peculiar interests. Chicago Crossing Guards Ass'n, 2 Pub. Employee Rep. (Ill.) par. 3009. In demonstrating that the group seeking severance has not received adequate representation from their bargaining representative, the evidence concerning the ineffective representation must be " 'obvious, longstanding and directed exclusively at the employees to be severed.' " County of Macon, 17 Pub. Employee Rep. (Ill.) par. 2042, at X-271, quoting International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 371 v. County of Rock Island & Sheriff of Rock Island County, 7 Pub. Employee Rep. (Ill.) par. 2040, No. S-RC-91-98, at X-195 (ISLRB August 22, 1991) (hereinafter County of Rock Island, 7 Pub.

No. 1-06-1645

Employee Rep. (Ill.) par. 2040). Moreover, the Board has made it clear that

"evidence merely reflect[ing] the fact that the [incumbent] Union has perhaps been

unable to achieve the maximum benefits for each individual group of employees—a

problem that might occur in any unit that encompasses more than one job title *** does

not necessarily support the conclusion that *** there exists a record of ineffective and

unresponsive representation of their peculiar interests ***." County of St. Clair, 18 Pub.

Employee Rep. (Ill.) par. 2015, at X-116.

The reason for this is that "it is a reasonable byproduct of collective bargaining process that a

favorable bargain for a small part of a broad-based unit may be lost in favor of a better bargain

for the *** whole." County of Cook & Sheriff of Cook County, 16 Pub. Employee Rep. (Ill.)

par. 3003, at XI-6.

We note that the Board has only once found that a group seeking severance from the

existing bargaining unit has met the second prong of the traditional standard, namely in

Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022. In that case, the Board

found that a unit of 115 bridge tenders could properly be severed from a larger bargaining unit,

also containing 550 electricians, where the existing bargaining unit had "all but abandoned

representing the group of employees seeking severance." County of Cook & Sheriff of Cook

County, 16 Pub. Employee Rep. (Ill.) par. 3003, at XI, citing Independent Bridge Tenders, 2 Pub.

Employee Rep. (Ill.) par. 3022. The Board specifically found that the petitioning bridge tenders

had met the second prong of the traditional severance standard because, *inter alia*, the incumbent

union had not processed any grievances on behalf of the bridge tenders, had not provided the

39

bridge tenders with a steward, did not admit the bridge tenders to regular membership in the union, and did not consult the bridge tenders for bargaining input so that the bridge tenders steadily lost ground to other unit members in wage and hour improvements. Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022. As such, the Board in Independent Bridge Tenders found that the representation of the bridge tenders by the incumbent union had been essentially "nonexistent since the 1960s' or early 1970s." Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022, at IX-110.

Since rendering its decision in Independent Bridge Tenders, the Board has asserted that the fact pattern in Independent Bridge Tenders is "the litmus test to determine if a union has failed to represent a group of employees for purposes of severance from an existing unit," and has refused to find that the second prong of the traditional severance standard has been satisfied where the failure to provide representation does not mirror that of Independent Bridge Tenders. See County of Cook & Sheriff of Cook County, 16 Pub. Employee Rep. (Ill.) par. 3003; see also, e.g., Chicago Park District, 6 Pub. Employee Rep. (Ill.) par. 3006.

In the present case, with respect to the second prong of the traditional severance test, the ICOP contends, just as it did before the Board, that Local 7 has been ineffective and unresponsive in its representation of the peace officers because (1) the provision in the collective bargaining agreement with the Water District do not meet the needs of the peace officers; (2) Local 7 did not "gather input" from its police officers as to contract negotiations; and (3) in 2004, Local 7 did not file a declaratory judgment action on behalf of the police officers in its bargaining unit to determine whether "police officers" were full-time police officers, so as to be

entitled to carry firearms off duty pursuant to the Law Enforcement Officers Safety Act of 2004 (Pub. L. 108-277, eff. July 22, 2004).  For the reasons that follow, we disagree.

The Board found and it is undisputed that despite the ALJ's requests to the ICOP to proffer evidence in support of its contention that Local 7 had ineffectively represented the peace officers, the ICOP failed to provide any such evidence.  Aside from generalized arguments that peace officers had "no real input" into contract negotiations, the ICOP presented no evidence that Local 7 abandoned the peace officers, separated the officers form the rest of the unit, gave peace officers full membership in the union, or failed to represent them with respect to major issues in the collective bargaining process, *i.e.* seeking comparable wage increases, hours or benefits.  See Independent Bridge Tenders, 2 Pub. Employee Rep. (Ill.) par. 3022.  Instead, as already noted above, the collective bargaining agreement revealed that much of the peace officer's wages, hours, benefits and vacations, were similar, if not, identical to the benefits of the other members of the bargaining unit.

We note that the ICOP does not even allege that Local 7 failed to offer bargaining proposals on behalf of the peace officers, or that there was a conflict of interest between the peace officers and the remainder of the unit.  Instead, Local 7 asserted and the Board found undisputed that "Local 7 sends a letter to each employee represented prior to commencing bargaining requesting that they submit proposals to the union which they wish presented in bargaining," that "Local 7 *** conducts membership meetings and steward meetings for development of proposals, and such meetings are open to police officers on the same basis as other employees," that "peace officers have a steward who is a peace officer, and that steward is

41

invited to stewards' meetings conducted by Local 7 and *** has the same right to attend membership meetings as any other member." In fact, the record contains a copy of letters provided to the Board by Local 7, which Local 7 sent to all of its stewards concerning the collective bargaining agreement negotiations, in which every steward, including Thomas Longini, the police officers' steward, was invited to discuss the pending contract negotiations and demands.

In addition, with respect to the ICOP's assertion that Local 7 failed to file a declaratory judgment action on behalf of the police officers in its bargaining unit to determine whether "police officers" were full-time police officers, so as to be entitled to carry firearms off duty pursuant to the Law Enforcement Officers Safety Act of 2004 (Pub. Law. 108-277, eff. July 22, 2004), the ALJ specifically found that the complaints regarding the ability of the peace officers to use firearms off duty was of no significance to Local 7's overall representation of the peace officers. Moreover, the Board found that the ICOP failed to allege that Local 7 was even aware of the ICOP's grievances in 2004 with respect to this issue. As such, under the aforementioned record, we find that the Board's conclusion that ICOP failed to prove the second prong of the traditional severance test was not clearly erroneous. See County of Cook & Sheriff of Cook County, 16 Pub. Employee Rep. (Ill.) par. 3003 (the Board held that even though the sheriff's deputies had a conflict with the rest of the unit in that their wage rate was based on a lower pay scale than the remainder of the unit and the incumbent had failed to represent the concerns of the petition-for deputies regarding safety issues and other matters relating to training, self-defense and hazardous duty pay, the incumbents' alleged failure in negotiations to address issues of

specific interest to the deputies raised no claim that warranted a hearing).

Consequently, we find that in dismissing the ICOP's petition, the Board acted in conformance with established case law and within its authority as defined by both the Act (5 ILCS 315/1 *et seq* (West 2006)) and the Board's rules and regulations (80 Ill. Adm. Code §1210.100 (a)(6), as amended by 28 Ill. Req. 4172, eff. February 19, 2004).

2. Applicability of a Less Stringent Severance Standard

The ICOP alternatively contends that in determining the appropriateness of its petition, the Board should have applied a less stringent severance standard. Relying on the Board's decision in County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015, and on section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)), the ICOP specifically contends that because the legislators have determined that mixed units of peace officers and nonpeace officers are presumptively invalid, the Board should have adopted a less stringent standard for severance. The ICOP proposed two possible standards before the Board. The first standard was enunciated in County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015, and permits severance of peace officers from mixed bargaining units containing both peace officers and non-peace officers at the mere request of the petitioning party. Under the second standard proposed by the ICOP a petitioner could obtain severance by establishing that: (1) the employees to be severed are police employees who are in a mixed unit of nonpeace officers; (2) that the employees have complied with section 9(a)(1) of the Act (5 ILCS 315/9(a)(1) (West 2006)) by having a labor organization acting on their behalf demonstrating that 30% of the public employees wish to be represented for the purpose of collective bargaining pursuant to section 3(s)(1) of the Act (5 ILCS 315/3(s)(1)

(West 2006)), by that said labor organization as exclusive representative; and (3) that there is no certification or contract bar. For the reasons that follow, we reject both standards and find that the Board properly applied the traditional severance standard.

We first note that although our review of the Board's determination regarding the applicability of a less stringent severance standard is *de novo* (Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 653), we nevertheless " 'accord [some] deference to the interpretation placed on a statute by the agency charged with its administration' " (City of Tuscola v. Labor Relations Board, 314 Ill. App. 3d 731, 734, 732 N.E.2d 784, 786 (2000), quoting William Rainey Harper Community College 512 v. Harper College Adjunct Faculty Ass'n, 273 Ill. App. 3d 648, 651, 653 N.E.2d 411, 414 (1995)). See also People ex rel. Birkett v. City of Chicago, 202 Ill. 2d 36, 46, 779 N.E.2d 875, 881 (2002) ("a reasonable construction *** by the agency charged with that statute's enforcement, if contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence, creates a presumption of correctness that is only slightly less persuasive than a judicial construction of the same act"); see also Nationwide General Insurance Co. v. Shapo, 328 Ill. App. 3d 1028, 1031, 767 N.E.2d 936, 1031 (2002) ("we defer to the reasonable interpretation placed on a statute by the agency charged with its administration and enforcement"); see also Board of Education of DuPage High School District No. 88 v. Illinois Educational Labor Relations Board, 246 Ill. App. 3d 967, 973-74, 617 N.E.2d 790, 794 (1993) (when reviewing a Board's decision "[i]f the question raised is purely legal, such as statutory construction, an agency's interpretation should receive deference because it flows from its experience and expertise [citation], but our review is

No. 1-06-1645

*de novo*”).

We next turn to the merits of the ICOP's contention. The ICOP first asserts that section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)) itself creates a less stringent severance standard that applies specifically to the severance of peace officers from existing bargaining units. We disagree.

Section 3(s)(1) of the Act, reads in pertinent part:

"A bargaining unit determined by the Board to contain peace officers shall contain no

employees other than peace officers unless otherwise agreed to by the employer and the

labor organization or labor organizations involved." 5 ILCS 315/3(s)(1) (West 2006).

Therefore according to the plain language of this section, although bargaining units that combine peace officers with nonpeace officers are disfavored, they are expressly permitted where the parties to the collective bargaining relationship agree to such an arrangement. Despite the ICOP's contention to the contrary, the language of section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)) does not require the severance of peace officers from an existing unit. In fact the Board has ruled on this issue on several occasions, each time rejecting the severance of peace officers from an existing unit upon the filing of a petition by a third party in order to preserve the stability of the parties' existing bargaining units. See Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026; Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037;; City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) Par. 3008.

In Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par.

45

2026, the Board found that the preservation of a historical bargaining unit of mixed peace officers and nonpeace officers superceded section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)), requiring that peace officers not be placed into bargaining units with nonpeace officers. In that case, similarly to the cause at bar, the Fraternal Order of Police (the petitioner) filed a petition for representation seeking to remove employees whom the parties agreed were "peace officers" within the meaning of section 3(k) of the Act (5 ILCS 315/3(k) (West 2006)) from certain bargaining units of the State of Illinois employees who were represented by two other incumbent unions. Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026. These bargaining units contained employees who were not peace officers. Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026. The ALJ found that she was required to reconcile two seemingly inconsistent statutory provisions, section 9(b) of the Act (5 ILCS 315/9(b) (West 2006)), which requires the ALJ to presume a historical unit the appropriate unit for the purpose of collective bargaining, and section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)), which provides that no bargaining unit determined by the Board to contain peace officers shall also contain employees other than peace officers unless such a "mixed" unit is agreed to by the employer and the labor organization or organizations involved. Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026. The ALJ found that all of the parties to the original agreements establishing these bargaining units agreed to their "mixed" status, and continued to do so. Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026. She therefore concluded that "it would contravene the Act's strong purpose of preserving historical relationships to allow

the FOP, which was not party to the units' formation, to now disrupt the established patterns of bargaining by dismantling the units." Illinois Department of Central Management Services, 3 3 Pub. Employee Rep. (Ill.) par. 2026, at VIII-8.

The Board in Illinois Department of Central Management Services agreed with the findings of the ALJ and dismissed the petition, holding that a historical unit of mixed peace officers and non-peace officers was appropriate under section 9 of the Act (5 ILCS 315/9 (West 2006)) because historical units are presumptively valid. Illinois Department of Central Management Services, 3 Pub. Employee Rep. (Ill.) par. 2026. In coming to this conclusion, the Board relied, *inter alia*, on the Act's policy as enunciated by sections 9(b) and 9(c) of the Act. See 5 ILCS 315/9(b) (West 2006) ("in cases where the employer has recognized the union as the sole and exclusive bargaining agent for a specified existing unit, the Board *shall* find the employees in the unit then represented by the union pursuant to the recognition to be the appropriate unit" (emphasis added)); see also 5 ILCS 315/9(c) (West 2006) ("[n]othing in this Act shall interfere with or negate the current representation rights or patterns and practices of labor organizations which have historically represented public employees for the purpose of collective bargaining *** unless a majority of employees so represented express a contrary desire pursuant to the procedures set forth in this Act").

Three years later, in Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037, the Board found that even absent the existence of a historical bargaining unit, section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)) did not permit automatic severance of peace officers from mixed peace officer and nonpeace-officer bargaining units, unless requested by the

parties to the collective bargaining agreement.  In that case, the petitioner argued that section

3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006)) conferred a "right" on peace officers to sever

from an existing mixed unit of peace officers and nonpeace officers and be represented in their

own bargaining units.  Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037.

The ALJ found petitioner's argument without merit, and noted that, the express terms of

section 3(s)(1) merely restricted the Board's "discretion to fashion appropriate bargaining units

in police employment."  Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par.

2037, at X-254.  The ALJ further found that to the extent that section 3(s)(1) creates any rights at

all, "those rights devolve not upon public employees but upon parties to collective bargaining

relationships, namely public employers and labor unions." Lake County Sheriff's Department, 6

Pub. Employee Rep. (Ill.) par. 2037, at X-254.  The ALJ therefore concluded that it is not

individual employees themselves but public employers and labor organizations who must agree

before the Board may certify mixed peace officer/nonpeace-officer units.  Lake County Sheriff's

Department, 6 Pub. Employee Rep. (Ill.) par. 2037. The ALJ compared section 3(s)(1) with the

special provisions in the Act pertaining to unit determinations for professional and craft

employees.  Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037.  In that

respect, the ALJ found that "[i]f the legislature had intended to grant peace officers the same

freedom of choice professional and craft employees have with respect to the composition of their

bargaining units, it presumably would have done so by providing, '...unless a majority of peace

officers votes for inclusion in such unit' or language to that effect."  Lake County Sheriff's

Department, 6 PERI ¶ 2037 (IL SLRB 1990). Instead, as the ALJ noted, the legislature left that

choice to unions and employers. Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037, at X-254. According to the ALJ, this distinction strongly indicated that, unlike certain other public employees, peace officers are not statutorily entitled to determine the composition of their bargaining units. Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037.

The Board agreed with the findings of the ALJ and concluded that severance of the mixed unit was inappropriate. Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037. In doing so, the Board stated:

"In Illinois Department of Central Management Services, 3 PERI ¶ 2026 (IL SLRB 1987), we held that [s]ection 3(s)(1) did not grant rival unions automatic severance rights with respect to historical mixed units of State peace officers and non-peace officers. We reasoned in that case that the clear legislative intent of the Act was to preserve the stability of existing historical bargaining units including those containing both State peace officers and non-peace officers. Given this intent we found it unlikely that the legislature intended [s]ection 3(s)(1) as a vehicle for disrupting such units. The legislative policy of preserving the stability of existing bargaining units must, of course, extend to existing certified units as well as historical units. Accordingly, we agree with the Hearing Officer's [ALJ's] finding that the legislature did not intend [s]ection 3(s)(1) as a vehicle for allowing automatic severance of peace officers from existing 'mixed units.' The petitioned-for unit is, therefore, inappropriate." Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037, at X-246.

Finally, in City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par.

3008, the Board reaffirmed its prior holdings. In that case, the relevant issue was whether the employer's 175 aviation security officers were peace officers, and if so, whether they could be severed from a larger bargaining unit of public safety employees. City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008. The petitioner (the Fraternal Order of Police) argued that section 3(s)(1) of the Act required that peace officers be severed from a unit unless all "labor organizations involved" agreed to the combining of the peace officers with non-peace officers in one unit. City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008. The petitioner further argued that it was an "involved labor organization," and that it would not consent to a unit combining peace officers and nonpeace officers. City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008. The ALJ rejected the contentions of the petitioner, and dismissed the petition without a hearing relying on Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037. City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008. The Board upheld the ALJ's dismissal, concluding that even if the employees met the definition of "peace officers," this alone would not automatically entitle the petitioner to severance. City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008. The Board specifically found that pursuant to Lake County Sheriff's Department, 6 Pub. Employee Rep. (Ill.) par. 2037, "a third party may not use *** [s]ection 3(s)(1) to effect an automatic severance of peace officers from an existing mixed unit." City of Chicago Aviation Security Officers, 9 Pub. Employee Rep. (Ill.) par. 3008, at XI-53.

Based on the aforementioned decisions by the Board, we are persuaded to conclude that contrary to the ICOP's contention, section 3(s)(1) of the Act (5 ILCS 315/3(s)(1) (West 2006))

does not create a less stringent severance standard that applies specifically to the severance of peace officers from existing bargaining units.

The ICOP nevertheless cites to County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015, for the proposition that a less stringent standard may be applied. We disagree, and find that case inapposite.

In County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015, the issue presented to the Board was whether the same union, which was the representative of a combined unit of peace officers and non-peace officers could sever its own unit, but still continue to represent both the peace officers and non-peace officers in separate units. Interpreting section 3(s)(1) of the Act, in that case, the Board stated:

> "The Act compels us to sever mixed units in the absence of *the parties' current express agreement.* To rule otherwise would create a situation in which *the parties to a collective bargaining relationship* would be forced to maintain a bargaining unit which the Act specifically disfavors even when the structure no longer advances *their interest.*" (Emphasis added.) County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015.

As such, the County of St. Clair stands only for the right of a party to a collective bargaining relationship composed of peace officers and non-peace officers to end its consent to the mixed unit. County of St. Clair, 18 Pub. Employee Rep. (Ill.) par. 2015.

In the present case, unlike in County of St. Clair, neither Local 7, nor the Water District have filed a petition to change the composition of the unit. Instead, both Local 7 and the Water

No. 1-06-1645

District are satisfied with the current composition and want to maintain the existing unit, which was created by these two parties almost 40 years ago. As such, we find the County of St. Clair inapplicable to the cause at bar.

Consequently, we also find that the Board properly looked to its well-established precedent holding that section 3(s)(1) of the Act did not permit a petitioning union to sever peace officers from an existing unit because of the disruptive effect to existing collective bargaining units, and properly rejected the application of the ICOP's proposed less stringent standard.

For the foregoing reasons we affirm the decision of the Board.

Affirmed.

O'MALLEY, P.J., and CAHILL, J., concur.

———

No. 1-06-1645

Please use the following
form

ILLINOIS COUNCIL OF POLICE,

           Petitioner-Appellant,

   v.

ILLINOIS LABOR RELATIONS BOARD,

LOCAL PANEL; METROPOLITAN

WATER RECLAMATION DISTRICT OF

GREATER CHICAGO; FIREMEN AND

OILERS UNION, LOCAL NO. 7, SEIU

           Respondents-Appellees.

           No. 1-06-1645

Docket No.

           Appellate Court of Illinois

COURT            First District, SIXTH Division

Opinion

Filed            December 19, 2008

           (Give month, day and year)

           JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:

JUSTICES            PRESIDING JUSTICE O'MALLEY, and JUSTICE CAHILL concur.

           Lower Court and Trial Judge(s) in form indicated in margin:

APPEAL from the

Circuit Court of Cook            Appeal from a petition for review of the order

County; the Hon___            of the Illinois Labor Relations Board, Local Panel

Judge Presiding.            Local Panel.

No. 1-06-1645

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel.  Indicate the word FOR NONE if not represented.

APPELLANTS

John Doe, of Chicago

For APPELLEES,  :        FOR APPELLANT: Noel T. Wroblewski, 1349 North Artesian Ave., Suite 3, Chicago, IL 60622

Smith and Smith of

Chicago,                 APPELLEES: For *IL Labor Relations Board*: Attorney General Lisa Madigan, Solicitor General Gary Feinerman, and Ass. Attorney General Carl J. Elitz, State of Illinois, 100 W. Randolph St. 12th Floor, Chicago, IL 60601; For *Local 7*: Marvin Gittler, Patricia Collins, and Michele Cotrupe, Asher, Gittler, Greenfield & D'Alba, Ltd., 200 W. Jackson Blvd., Suite 1900, Chicago IL, 60606.

Add attorneys for third-party appellants and/or appellees.