# Illinois Official Reports

## Appellate Court

***Trygg v. Illinois Labor Relations Board, State Panel*,**
**2014 IL App (4th) 130505**

| | |
|---|---|
| Appellate Court Caption | BRIAN TRYGG, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE DEPARTMENT OF CENTRAL MANAGEMENT SEVICES/DEPARTMENT OF TRANSPORTATION, REGION 3, DISTRICT 5, Respondents.– BRIAN TRYGG, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE GENERAL TEAMSTERS PROFESSIONAL AND TECHNICAL EMPLOYEES UNION, LOCAL 916, Respondents. |
| District & No. | Fourth District<br>Docket Nos. 4-13-0505, 4-13-0506 cons. |
| Filed | May 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the collective bargaining agreement between respondent union and respondent Department of Central Management Services (CMS) on behalf of petitioner's employer, the Department of Transportation, failed to protect petitioner's right of nonassociation under section 6(g) of the Illinois Public Labor Relations Act and the record was insufficient to allow the appellate court to properly address petitioner's claims that both the union and CMS violated the provisions of the Act regarding petitioner's right to nonassociation, the dismissal of petitioner's claims by the Illinois Labor Relations Board, State Panel, was reversed and the cause was remanded for the issuance of complaints and hearings under section 11 of the Act on the issues of whether unfair labor practices were engaged in by CMS and the union when they entered into an agreement that did not guard petitioner's right of nonassociation. |

| | |
|---|---|
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, Nos. S-CA-10-092, S-CB-10-024. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Brian Trygg, of Paris, petitioner *pro se*. |
| | Michael W. O'Hara, of Cavanagh & O'Hara, and Stephanie L. Barton, of City of Springfield, both of Springfield, for respondent General Teamsters Professional and Technical Employees Union. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow and Laura M. Wunder, Assistant Attorneys General, of counsel), for other respondents. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. Justices Knecht and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    These consolidated appeals involve section 6(g) of the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/6(g) (West 2008)), which allows public employees who desire nonassociation with a labor union "based upon bona fide religious tenets or teachings of a church or religious body of which such employees are members" to pay an amount equal to their "fair share" dues to a nonreligious charity instead of to the union. The proper interpretation of section 6(g) of the Act presents an issue of first impression.

¶ 2    In December 2009, petitioner, Brian Trygg, a civil engineer employed by the Illinois Department of Transportation (IDOT), received a notification from the General Teamsters Professional and Technical Employees Union, Local 916 (Teamsters) that the Illinois Labor Relations Board (Board) had certified his employment position for inclusion in the existing collective-bargaining agreement between the Teamsters, IDOT, and the Department of Central Management Services (CMS). Shortly thereafter, petitioner informed both his employer and the Teamsters via e-mail that he did not want to join the Teamsters and, instead, (1) wished to claim the right of nonassociation under section 6(g) of the Act and (2) requested that his fair-share dues to be withheld from the Teamsters until his section 6(g) claim was resolved.

Later, in response to the Teamsters' request, petitioner attempted to explain in an e-mail why his religious beliefs brought him under the protection of section 6(g) of the Act. The Teamsters never responded to that e-mail. CMS, acting on behalf of IDOT, subsequently deducted fair-share dues from petitioner's pay.

¶ 3 Later in December 2009, petitioner filed separate charges with the Board, alleging that CMS and the Teamsters committed unfair labor practices under section 10 of the Act (5 ILCS 315/10 (West 2008)). In December 2012, following investigations pursuant to section 11 of the Act (5 ILCS 315/11 (West 2008)), the Executive Director of the Board dismissed both of petitioner's charges. Petitioner appealed to the Board pursuant to section 1200.135 of Title 80 of the Illinois Administrative Code (Administrative Code) (80 Ill. Adm. Code 1200.135 (2003)). In May 2013, the Board affirmed the Executive Director's dismissal of the charges.

¶ 4 Petitioner *pro se* appeals from both dismissals, arguing that CMS and the Teamsters committed unfair labor practices under section 10 of the Act by entering into a collective-bargaining agreement that failed to safeguard the right of nonassociation under section 6(g) of the Act. We consolidated the appeals on our own motion. For the reasons that follow, we reverse the Board's dismissal of petitioner's charges against CMS and the Teamsters and remand for the issuance of complaints and hearings pursuant to section 11 of the Act.

¶ 5                                    I. BACKGROUND

¶ 6 The following facts were gleaned from the records of administrative proceedings on petitioner's unfair labor practice charges.

¶ 7                        A. Events Preceding Petitioner's Charges

¶ 8 In January 2009, CMS, IDOT, and the Department of Natural Resources (DNR) entered into a collective-bargaining agreement with the Teamsters, which recognized the Teamsters as the exclusive bargaining representative for certain classes of technical employees employed by IDOT and DNR. (DNR is not a party to these appeals. Because CMS administers petitioner's compensation, we refer to CMS as petitioner's employer throughout this opinion.) The collective-bargaining agreement included a fair-share agreement, which required CMS to deduct from the paychecks of employees who did not join the Teamsters an amount equal to the dues paid by member employees. The agreement required CMS to then remit those fair-share deductions to the Teamsters.

¶ 9 The collective-bargaining agreement contained no mention of section 6(g) of the Act, which requires that nonmember employees be allowed to have their fair-share deductions remitted to a nonreligious charity instead of to a union, provided that such an exemption be "based upon bona fide religious tenets or teachings of a church or religious body of which such employee[ ] [is a member]." 5 ILCS 315/6(g) (West 2008).

¶ 10 In late November 2009, the Board certified petitioner's employment classification at IDOT (civil engineer V) for inclusion in the collective-bargaining agreement.

¶ 11 On December 2, 2009, one of petitioner's colleagues sent an e-mail to petitioner and other IDOT employees informing them of their inclusion in the collective-bargaining agreement. Ninety minutes later, petitioner sent an e-mail to his supervisor, Lugene Joines, informing him that he (1) did not wish to join the Teamsters and (2) wished to take advantage of section 6(g)

of the Act by having his fair-share deductions remitted to a nonreligious charity instead of the Teamsters. Petitioner explained in his e-mail that he was a member of the Gideons International, a Christian professional and businessmen's association, and that membership in the Teamsters was contrary to his beliefs and degrading to his standing as a professional. That same day, Joines replied to petitioner's e-mail and told him to contact either Dan Magee, the Teamsters' division representative, or Leo Carroll, the Teamsters' business agent.

¶ 12 On or around that same day, petitioner received a letter from the Teamsters explaining the benefits of Teamsters membership and the steps necessary to formally join the Teamsters. The Teamsters' letter did not mention petitioner's option to abstain from joining the Teamsters and to instead take fair-share deductions, nor did it mention the religious protections of section 6(g) of the Act.

¶ 13 On December 7, 2009, petitioner sent the following e-mail to Carroll:

"Mr. Carroll,

I have contacted Dan Magee concerning my right to nonassociation of employees. *** This issue is important to me and I would like to pursue resolving it before monies are unfairly removed from my paycheck and sent to the [Teamsters] instead of being nonassociated and provided to a charity.

I tried contacting you by telephone, but you must have been away from your office. Our Administrative Services Bureau advises the payroll information is due within the next few days, so time is of the essence."

¶ 14 On December 8, 2009, petitioner sent a letter to Joseph Crowe, Deputy Director of IDOT Region 3, informing him that he wished to invoke his rights under section 6(g) of the Act based upon his religious beliefs. Petitioner requested that his fair-share deductions be immediately withheld from the Teamsters until a charitable organization could be determined. Petitioner sent a carbon copy of that letter to the Board and the Teamsters.

¶ 15 On December 9, 2009, Carroll, on behalf of the Teamsters, sent the following e-mail to petitioner:

"[W]e need to know the following: What established religion do you belong to and adhere to[?] What tenet or teaching of that religion prohibits payment to a union? Further[,] we need a list of the charities you wish the monies to go to. Once we have received this info, we will meet with our attorney and get back to you."

Three hours later, petitioner responded to Carroll's e-mail, as follows:

"I have viewed my career as a Professional Engineer with [IDOT] as requiring a high moral and professional standard, which is rooted in my Christian values. My membership in the Gideons International is based on my beliefs and values as a professional man. Including me with the Teamsters diminishes my stature in my professional career and is contrary to my religious beliefs.

Here is the information that you are requesting:

*What established religion do you belong to and adhere to?*

Christianity. My background has brought me to learn values from mainly Presbyterian, Baptist, and Methodist denominations. As an evangelical Christian currently with membership in a Methodist church, I had the opportunity to become a member of [the] Gideons International. This is an association of Christian business and professional men. The membership is based upon the need for men of good [rapport]

and good standing to participate in the work of spreading God's word. For this reason, the standards of membership are made and kept high.

*What tenet or teaching of that religion prohibits payment to a union?*

I cannot point directly to a teaching of Christianity that prohibits payment to a union, but the tenets of my belief are rooted in the need for me to be a professional man of good [rapport] and good standing, with high moral and religious standards. I believe the Lord has been with me and provided for me, and that I should not bow down to other gods."

Petitioner further stated that he wished his fair-share dues to be remitted to the American Diabetes Association. Neither Carroll nor any representative from the Teamsters responded to petitioner's e-mail.

On December 21, 2009, petitioner gained electronic access to his pay stubs for the pay period ending on December 15, 2009. Those pay stubs showed that CMS had deducted fair-share dues from petitioner's pay.

On December 28, 2009, petitioner filed with the Board separate unfair labor practice charges against CMS and the Teamsters pursuant to section 10 of the Act. (Petitioner filed those charges by completing standardized charging forms downloaded from the Board's website, which he then submitted to the Board.)

## B. Board Case Number S-CA-10-092

### 1. *Petitioner's Charge Against CMS*

In his charge against CMS, which the Board docketed as case No. S-CA-10-092 (our case No. 4-13-0505), petitioner alleged that CMS committed an unfair labor practice under section 10(a) of the Act by failing to safeguard his right of nonassociation under section 6(g) of the Act. Specifically, petitioner argued that CMS failed to (1) provide notice of the right of nonassociation, (2) respond to petitioner's invocation of the right of nonassociation, or (3) withhold petitioner's fair-share dues from the Teamsters.

In a section of the charging form titled "relief of remedy sought by charging party," petitioner stated the following:

"I ask that disclosure of [section 6(g) of the Act] be supplied to all employees involved with union representation to eliminate oppression created by the omission in considering or honoring beliefs. I ask that my religious values be recognized, that an apology be made in writing, and that documents be provided showing that the monies are returned from the [Teamsters] so that they can be provided to a nonreligious charitable organization."

### 2. *CMS's Response*

On January 22, 2010, CMS filed a three-page response to petitioner's charge, asserting that both the collective-bargaining agreement and sections 6(e) and 6(f) of the Act obligated CMS to deduct fair-share dues from petitioner's pay and remit those deductions to the Teamsters. CMS contended that its "obligation ends there," and that application of the religious exemption of section 6(g) of the Act–specifically, the process of forwarding petitioner's fair-share fees to a nonreligious charitable organization–is a matter to be resolved exclusively between

petitioner and the Teamsters. CMS further asserted that if it would have withheld petitioner's fair-share dues from the Teamsters, that action would have violated the Act.

¶ 24        CMS also claimed that it was not required to provide petitioner with notice of his statutory rights, including the right of nonassociation under section 6(g) of the Act. Alternatively, CMS argued that even if notice was required, petitioner was clearly aware of his rights under section 6(g) of the Act, as demonstrated by his ability to invoke those rights in a timely manner, and he therefore suffered no harm from CMS's failure to provide notice.

¶ 25                                *3. Petitioner's Response to CMS's Response*

¶ 26        On January 25, 2010, petitioner filed a response to CMS's response. Petitioner asserted that CMS's failure to include provisions safeguarding the right of nonassociation in its collective-bargaining agreement with the Teamsters constituted an unfair labor practice under section 10(a)(2) of the Act by discriminating in a term or condition of employment in order to encourage or discourage membership in or other support for any labor organization.

¶ 27        Petitioner conceded that he personally suffered no harm from CMS's failure to provide him with notice of his right of nonassociation. Petitioner stated that he fortuitously happened to learn of his right of nonassociation from a fellow employee, but were it not for that employee, he would have remained ignorant to his rights under section 6(g) of the Act.

¶ 28        Petitioner also conceded that his eligibility for the religious exemption of section 6(g) of the Act was a point of debate between him and the Teamsters, and that CMS should not be involved in that determination. However, petitioner argued that because CMS and the Teamsters were equal parties to the collective-bargaining agreement, and because section 6(g) of the Act required the "agreement" to safeguard the right of nonassociation, CMS and the Teamsters shared the responsibility to ensure that petitioner's fair-share dues would not go to the Teamsters. In other words, although petitioner conceded that his eligibility for nonassociation under section 6(g) of the Act was a point of debate between only him and the Teamsters, he claimed that section 6(g) of the Act required CMS to safeguard his right of nonassociation by withholding his fair-share dues from the Teamsters until that debate could be resolved.

¶ 29                                *4. Dismissal of Petitioner's Charge*

¶ 30        In December 2012, the Executive Director of the Board, Jerald Post, dismissed petitioner's charge against CMS in a written order, concluding that "the charge fails to raise an issue of law or fact sufficient to warrant a hearing." Focusing on the relief petitioner requested in his charge, Post determined that nothing in the Act or the Administrative Code required CMS to provide employees with notice of their rights under section 6(g) of the Act. Finding no requirement that CMS provide petitioner with notice of his rights, Post concluded that petitioner's charge failed to raise an issue for hearing.

¶ 31                                *5. Petitioner's Administrative Appeal*

¶ 32        In his appeal pursuant to section 1200.135 of Title 80 of the Administrative Code, petitioner essentially reasserted his argument that CMS violated its duty to safeguard the right of nonassociation under section 6(g) of the Act. In May 2013, the Board affirmed Post's dismissal of petitioner's charge.

¶ 33                    C. Board Case Number S-CB-10-024

¶ 34              1. *Petitioner's Charge Against the Teamsters*

¶ 35       In his charge against the Teamsters, which the Board docketed as case number S-CB-10-024 (our case No. 4-13-0506), petitioner alleged that the Teamsters committed an unfair labor practice under section 10(b) of the Act by failing to safeguard his right of nonassociation under section 6(g) of the Act. Specifically, petitioner argued that the Teamsters failed to (1) provide notice of the right of nonassociation, (2) respond to petitioner's invocation of the right of nonassociation, or (3) refuse to accept petitioner's fair-share dues from CMS.

¶ 36       Petitioner's statement of the relief or remedy he sought was identical to the statement he included in his charge against CMS.

¶ 37                    2. *The Teamsters' Response*

¶ 38       On January 7, 2010, the Teamsters, through its attorney, submitted a nine-page response to petitioner's unfair labor practice charge, asserting that it did "not believe that [petitioner] has alleged sufficient facts to warrant issuance of a complaint in conjunction with an unfair labor practice charge concerning his assertion that he possesses a valid *bona fide* religious objection to the payment of union dues and/or fair share payments." In response to petitioner's explanation of his religious beliefs, the Teamsters argued that petitioner's asserted beliefs were insufficient under section 6(g) of the Act, in part, because they were inconsistent with statements of the Pope of the Roman Catholic Church and unsubstantiated by scholarly evidence.

¶ 39                    3. *The Robert Gierut E-mail*

¶ 40       On September 20, 2012, Board representative Robert Gierut sent an e-mail to petitioner, informing him that the Board was in the process of clearing a backlog of cases, including petitioner's charges against CMS and the Teamsters. Gierut asked petitioner for additional information, including whether the Teamsters had honored his request to have his fair-share assessment forwarded to the American Diabetes Association.

¶ 41       In response, petitioner stated that although he had not received any communication from the Teamsters, 67 deductions totaling $3,623.78 had been taken from his pay to date, and he had received no information indicating that the deductions had been placed in escrow pending resolution of his charges.

¶ 42                    4. *Dismissal of Petitioner's Charge*

¶ 43       In December 2012, Post dismissed petitioner's charge in a written order, concluding that "the charge fails to raise an issue of law or fact sufficient to warrant a hearing." Regarding petitioner's claim that the Teamsters failed to provide him with notice of his rights under section 6(g) of the Act, Post asserted that the Act contains no such notice requirement. Even if the Teamsters should have provided petitioner with some kind of notice, Post concluded, the evidence showed that petitioner was nonetheless fully aware of his rights and able to assert them in a timely fashion.

¶ 44       As to petitioner's claim that the Teamsters committed an unfair labor practice by failing to honor his request for exemption under section 6(g) of the Act, Post found that petitioner's

asserted beliefs were no more than a personal predisposition, and therefore insufficient under section 6(g) of the Act.

¶ 45          5. *Petitioner's Administrative Appeal*

¶ 46          In his appeal pursuant to section 1200.135 of Title 80 of the Administrative Code, petitioner reasserted his argument that the Teamsters violated its duty to safeguard the right of nonassociation under section 6(g) of the Act. Quoting biblical scripture and further elaborating on his beliefs, petitioner also argued that his religious beliefs were sufficient under section 6(g) of the Act. In May 2013, the Board affirmed Post's dismissal of petitioner's charge against the Teamsters.

¶ 47          These appeals followed the Board's May 2013 dismissals of petitioner's charges against CMS and the Teamsters. As previously stated, we consolidated the appeals on our own motion.

¶ 48          II. ANALYSIS

¶ 49          In his *pro se* appeals, petitioner essentially contends that CMS and the Teamsters committed unfair labor practices under section 10 of the Act by entering into a collective-bargaining agreement that failed to safeguard the right of nonassociation under section 6(g) of the Act. Specifically, petitioner contends that the agreement failed to (1) disclose or provide notice to employees of the right of nonassociation or (2) set out procedures through which CMS and the Teamsters would address employees' claims for nonassociation under section 6(g) of the Act. Petitioner further asserts that the Teamsters committed an unfair labor practice by failing to honor his invocation of the right of nonassociation under section 6(g) of the Act. We address petitioner's claims in turn. Before doing so, however, we briefly review the applicable statutes governing unfair labor practice procedures to place the Board's dismissals into context.

¶ 50          A. Section 11(a) of the Act and the Standard of Review

¶ 51          Section 11(a) of the Act governs unfair labor practice procedures. That section provides that when a party files an unfair labor practice charge, the Board or its designated agent shall conduct an investigation of the charge. 5 ILCS 315/11(a) (West 2008). Section 11(a) further provides that "[i]f after such investigation[,] the Board finds that the charge involves a dispositive issue of law or fact[,] the Board shall issue a complaint and cause to be served upon the [charged party] a complaint stating the charges, accompanied by a notice of hearing before the Board or a member thereof designated by the Board, or before a qualified hearing officer designated by the Board." 5 ILCS 315/11(a) (West 2008).

¶ 52          Upon petitioner's filing of his charges against CMS and the Teamsters, the Board designated Post to investigate the charges pursuant to section 11(a) of the Act. This court recently stated the purpose of such an investigation and the standard of review applicable to the Board's dismissal of a charge at the investigation stage, as follows:

> "When investigating such a charge, the Board is analogous to a grand jury. [Citation.] Like a grand jury, the Board assesses the credibility of witnesses; draws inferences from the facts; and, in general, decides whether there is enough evidence to support the charge. [Citation.] If the Board finds an issue of law or fact sufficient to warrant a hearing, the Board will issue a complaint setting forth the issues that warrant a hearing.

5 ILCS 315/11(a) (West 2008); 80 Ill. Adm. Code 1220.40(a)(3) (2012). However, the Board will dismiss the charge if the charge fails to state a claim on its face or the investigation reveals no issue of law or fact sufficient to warrant a hearing. 80 Ill. Adm. Code 1220.40(a)(4) (2012)." *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 44, 969 N.E.2d 996.

¶ 53    Judicial review of the Board's dismissal of a charge lies directly in the appellate court. 5 ILCS 315/11(e) (West 2008). We apply a deferential standard of review to the Board's dismissal of a charge:

"When deciding whether there is enough evidence to justify a hearing, the Board must exercise its discretion or judgment. It is within the sound discretion of the Board to dismiss an unfair labor practice charge. [Citations.] Thus, if the Board decides there is not enough evidence and dismisses the charge, we ask whether it abused its discretion. [Citations.] The Board abuses its discretion only where its decision to dismiss the charge is clearly illogical. [Citation.] The fact we may have reached a different decision than the Board is not, by itself, sufficient to justify reversing the Board's decision." *Michels*, 2012 IL App (4th) 110612, ¶ 45, 969 N.E.2d 996.

¶ 54    In this case, petitioner filed separate unfair labor practice charges against CMS and the Teamsters relating to the collective-bargaining agreement that those parties entered into. Petitioner charged CMS with committing unfair labor practices under the following provisions of section 10(a) of the Act:

"It shall be an unfair labor practice for an employer or its agents:

(1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act ***;

(2) to discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization. Nothing in this Act or any other law precludes a public employer from making an agreement with a labor organization to require as a condition of employment the payment of a fair share under paragraph (e) of Section 6[.]" 5 ILCS 315/10(a)(1)-(2) (West 2008).

¶ 55    Petitioner charged the Teamsters with committing an unfair labor practice under the following provision of section 10(b)(1) of the Act:

"It shall be an unfair labor practice for a labor organization or its agents:

(1) to restrain or coerce public employees in the exercise of the rights guaranteed in this Act ***[.]" 5 ILCS 315/10(b)(1) (West 2008).

¶ 56    Following his investigations, Post dismissed petitioner's charges against CMS and the Teamsters, finding that neither charge raised issues of law or fact sufficient to warrant a hearing. Following petitioner's administrative appeal, the Board upheld that dismissal. Accordingly, the ultimate question before us is whether the Board abused its discretion by dismissing petitioner's charges. As discussed in further detail below, we conclude, and the Board concedes before this court, that neither of petitioner's charges should have been dismissed.

¶ 57                                    B. The Duty To Safeguard the Right of Nonassociation

¶ 58              Section 6(g) of the Act provides, in pertinent part, as follows:

> "Agreements containing a fair share agreement must safeguard the right of nonassociation of employees based upon bona fide religious tenets or teachings of a church or religious body of which such employees are members. Such employees may be required to pay an amount equal to their fair share, determined under a lawful fair share agreement, to a nonreligious charitable organization mutually agreed upon by the employees affected and the exclusive bargaining representative to which such employees would otherwise pay such service fee." 5 ILCS 315/6(g) (West 2008).

¶ 59              Petitioner asserts that because section 6(g) of the Act provides that the *agreement* must safeguard the right of nonassociation, the written collective-bargaining agreement itself must set out the procedures through which the parties to the agreement will safeguard the right of nonassociation under section 6(g) of the Act. Petitioner essentially argues that CMS and the Teamsters committed unfair labor practices under section 10 of the Act by entering into a collective-bargaining agreement that failed to include provisions designed to implement section 6(g) of the Act. Petitioner asserts that among the necessary safeguard provisions were (1) notice to employees of their rights under section 6(g) of the Act and (2) formal procedures for handling employees' claims for nonassociation under section 6(g) of the Act, including escrow of fair-share dues while an employee's claim was pending. We agree that the collective-bargaining agreement between CMS and the Teamsters failed to safeguard the right of nonassociation under section 6(g) of the Act.

¶ 60              The parties do not dispute that the collective-bargaining agreement included no mention of the right of nonassociation under section 6(g) of the Act, nor procedures designed to carry out the requirements of that section, as the facts of this case clearly demonstrated. After petitioner unambiguously stated to his supervisor that he intended to claim the right of nonassociation under section 6(g) of the Act, his supervisor told him to take up his claim with the Teamsters. After petitioner claimed the right of nonassociation with the Teamsters, the Teamsters sent petitioner an e-mail asking him to explain (1) "what established religion" he belonged to and (2) what "tenet or teaching of that religion prohibit[ed] payment to a union." When petitioner attempted to answer those questions, his e-mail went ignored. Shortly thereafter, despite having knowledge of petitioner's invocation of the statutory right of nonassociation, the Teamsters apparently took receipt of petitioner's fair-share dues without placing them into escrow or forwarding them to the American Diabetes Association, which petitioner had clearly designated as the nonreligious charity he wished to receive his fair-share dues.

¶ 61              The fact that petitioner was forced to file an unfair labor practice charge with the Board before the Teamsters or CMS formally addressed the merits of his claim for nonassociation under section 6(g) of the Act demonstrates that the collective-bargaining agreement utterly failed to safeguard the right of nonassociation. Petitioner associated with the Teamsters against his will when his fair-share dues went into the Teamster's coffers. Section 6(g) of the Act requires that the right of nonassociation be safeguarded by more than the type of unwritten, improvised procedures on display in this case.

¶ 62              In the 1986 administrative case of *Navratil & American Federation of State, County & Municipal Employees, Council 31*, 2 PERI ¶ 2044 (ISLRB 1986), the Board addressed the issue of procedural safeguards under section 6(g) of the Act and noted that although the statute "does not expressly define [the] procedural safeguards" necessary to protect the right of

nonassociation, the United States Supreme Court's decision in *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986), entitled the employee in *Navratil* to constitutional due process. *Navratil*, 2 PERI ¶ 2044. In *Navratil*, 2 PERI ¶ 2044, the Board concluded that the employee received adequate due process because (1) he received notice and an explanation of the religious exemption; (2) he received a reasonably prompt and impartial hearing on his claim for nonassociation, albeit through the unfair labor practice procedures; and (3) his fair-share dues were placed in escrow pending resolution of his claim for nonassociation.

¶ 63    We note that the procedural safeguards set forth in *Hudson* were those minimally required under the constitution for fair-share agreements in general. The Supreme Court did not hold that such procedural safeguards were constitutionally required when an employee invoked a statutory exemption to an otherwise valid fair-share agreement, such as the exemption created by section 6(g) of the Act. Nonetheless, the Board in *Navratil* appeared to interpret section 6(g) of the Act as requiring procedural safeguards akin to those enunciated in *Hudson*. We give deference to the Board's interpretation of the Act, which it was created to enforce and in which it has experience and expertise. *Illinois Council of Police v. Illinois Labor Relations Board, Local Panel*, 387 Ill. App. 3d 641, 660, 899 N.E.2d 1199, 1215 (2008).

¶ 64    In *Hudson*, 475 U.S. at 310, the Supreme Court held that "the constitutional requirements for the Union's collection of agency fees [(also known as fair-share dues)] include [1] an adequate explanation of the basis for the fee, [2] a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and [3] an escrow for the amounts reasonably in dispute while such challenges are pending." Citing *Hudson*, the Board and the Teamsters concede that because petitioner's fair-share dues should have been placed in escrow pending the resolution of his section 6(g) claim, the Board should not have dismissed petitioner's charges. We need not decide whether the statutory right of nonassociation under section 6(g) of the Act is also constitutional in dimension, thus implicating the constitutional requirements of *Hudson*, because we conclude that safeguarding the right of nonassociation under section 6(g) of the Act necessarily requires escrow of fair-share dues pending resolution of an employee's claim under that section. Preventing the union from receiving an objecting employee's fair-share dues is the only means by which nonassociation is accomplished under section 6(g) of the Act. It is therefore evident that the General Assembly intended an objecting employee's dues to be placed in escrow pending resolution of his claim under section 6(g) of the Act.

¶ 65    CMS argues that even if petitioner's fair-share dues should have been placed in escrow, the Board nonetheless properly dismissed petitioner's charge against CMS because the responsibility to escrow fell entirely upon the Teamsters. However, CMS overlooks the command of section 6(g) of the Act that the *agreement* safeguard the right of nonassociation. Because escrow of fair-share dues is required to safeguard the right of nonassociation, both parties to the agreement are responsible for ensuring that the agreement spells out procedures for escrowing the fair-share dues of employees who invoke their right of nonassociation. CMS's argument would require us to conclude that the duty to safeguard under section 6(g) of the Act can be satisfied through procedures that exist entirely outside of the actual collective-bargaining agreement. Because section 6(g) of the Act explicitly requires the *agreement* to safeguard the right of nonassociation, both parties to the agreement are responsible for ensuring that it does so. Likewise, when an agreement fails to comply with section 6(g) of the Act, both parties share equal culpability.

¶ 66       However, the fact that the collective-bargaining agreement between CMS and the Teamsters violates section 6(g) of the Act does not automatically mean that either CMS or the Teamsters are guilty of an unfair labor practice under section 10 of the Act. Questions of law and fact remain over whether the agreement's failure to safeguard the right of nonassociation–for which CMS and the Teamsters are equally culpable–constituted, or resulted in, unfair labor practices under section 10 of the Act. Because of these unresolved issues of law and fact, the Board abused its discretion by dismissing petitioner's charges against CMS and the Teamsters. As previously stated, the Board concedes that the charges should not have been dismissed.

¶ 67       Because the collective-bargaining agreement failed to safeguard the right of nonassociation under section 6(g) of the Act, the fact-finding procedures used in this case failed to provide us with a sufficiently complete record from which to address the merits of petitioner's claim for nonassociation. Accordingly, we decline to address whether petitioner qualifies for the right of nonassociation under section 6(g) of the Act. Until formal procedures are in place to appropriately address petitioner's claim for nonassociation, petitioner's right of nonassociation can be adequately protected through escrow of his fair-share dues.

¶ 68                                             III. CONCLUSION

¶ 69       For the foregoing reasons, we reverse the Board's dismissal of petitioner's charges against CMS and the Teamsters and remand for the issuance of complaints and hearings pursuant to section 11 of the Act to determine whether CMS and the Teamsters engaged in unfair labor practices by entering into a collective-bargaining agreement that failed to safeguard the right of nonassociation under section 6(g) of the Act. Consistent with the Board and Teamsters' concessions, we further direct that the sum of petitioner's fair-share dues to date and future payments be placed in escrow pending a final decision on his claim for nonassociation under section 6(g) of the Act.

¶ 70       Reversed and remanded with directions.